No. 49,003

STATE OF KANSAS, *Appellee,* v. JOE B. ROACH, *Appellant.*

(576 P.2d 1082)

Opinion filed April 1, 1978.

*Jerry D. Bogle,* of Gott, Hope, Gott, Young & Saffels, P.A., of Wichita, argued the cause and was on the brief for the appellant.

*Harold T. Pickler,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Vern Miller,* district attorney, and *Roger Skinner,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Joe B. Roach was convicted of aggravated robbery (K.S.A. 21-3427) of a candy store in Wichita, Kansas, on December 1, 1975. He appeals from that conviction and raises three points. All points concern the admission into evidence of polygraph test results.

In the state's case in chief there was no mention of either an offer or refusal by the defendant to submit to a polygraph examination.

The defendant Roach took the stand in his defense and interjected into the record his prior willingness to take a polygraph examination. This testimony went into the record as a result of his unresponsive answer on direct examination as follows:

"Q. Your mother testified yesterday that you asked the police to take you down to Mrs. Rolfe's store and see if she would identify you as not being the one present. Did you do that?

"A. Yeah, I asked him to take me down, and asked—and he asked me would I take a lie detector test, and I told him I would take that; and then they wouldn't, and they didn't say nothing about that. I thought I was going to take one, but I didn't know, so I just sit there and I didn't know what was going on then, that I know of."

The defendant's attorney permitted the unresponsive answer to stand without asking to have the inadmissible testimony stricken. On cross-examination the state questioned the defendant as follows:

"Q. Now, insofar as your conversation with Detective Sichley was concerned, you told him that you would take the lie detector test?

"A. Yep.

"Q. Does that offer still stand?

"A. Yep.

"Q. And you would still be willing at this time to take a lie detector test?

"A. Yep.

"Q. And would you be willing to let the jury hear the results of that test, whatever they may be?

"A. Yep."

No objection was made to this line of questioning. The prosecuting attorney continued questioning defendant about other matters. He then stated he had no further questions, and the witness was asked to step down. Defense counsel requested a recess at which time the prosecution asked to approach the bench. Outside the hearing of the jury he requested permission to transport defendant to the police department to take a lie detector test, pursuant to the offer on cross-examination. The court stated it thought defendant was bound by his testimony on cross-examination. Defense counsel requested a couple of minutes to confer with the defendant, " . . . just to make sure he understands what he's up to." The prosecutor agreed, adding that if defendant refused he thought he was entitled to have the refusal before the jury. Defense counsel agreed. Defense counsel conferred with the defendant, returned to the bench and reported: "We're going to go. We're ready." The court then directed an order be prepared for his signature. The test was conducted that afternoon.

Over objection Detective Harold Malone, a polygraph examiner for the Wichita Police Department, testified in detail as to his qualifications and the examination of defendant. He testified he gave defendant two written forms to read, one a polygraph release form stating defendant was voluntarily taking the test, without duress or coercion; the other a rights form containing the *Miranda* rights, including the right to remain silent and the right to an attorney. He then asked defendant if he understood them to which defendant replied he did and defendant then signed both forms. Defense counsel did not see these forms until they were introduced at trial, at which time he objected to their admission. The objection was overruled.

Detective Malone testified that the results of the polygraph examination indicated defendant was not telling the truth when he said he was not in the candy store when the robbery occurred and he was not telling the truth when he said he did not point a gun at the proprietor. The examiner testified fully as to his qualifications, the manner in which the examination was conducted, and the way the machine reacted to changes in the normal body functions. He was cross-examined fully on the limitations inherent in polygraph examinations and the possibilities for error which were inherent in the results to be obtained.

We turn to the points raised on appeal. It should be noted at the outset, testimony in a criminal trial that a defendant either refused a polygraph test or offered to submit to one is not admissible into evidence. (*State v. Emery,* 218 Kan. 423, 425, 543 P.2d 897 [1975]. See also authorities cited at p. 760 of *State v. Lassley,* 218 Kan. 758, 545 P.2d 383 [1976].)

The first point on appeal is that the polygraph results were inadmissible in the absence of a written stipulation and a determination the stipulation was voluntarily and knowingly made.

A similar, though not identical, situation was present in *State v. Lassley,* supra. There the defendant moved the court, in the presence of the jury, to order the chief of police to arrange the test for him. He informed the court he would stipulate the results would be admissible into evidence. Upon resumption of the trial the examiner testified in detail as to the operation of the machine, the manner in which the test was given, and the results. No objection was raised. There was no separate written stipulation executed or filed.

On appeal the defendant claimed error because he was unaware of the numerous faults inherent in such a testing system. This court noted that in the absence of a stipulation, the results of a polygraph test would not be admissible. The court continued:

"A much different situation, however, is presented when the parties stipulate the results will be admissible in evidence. Despite the recognized flaws inherent in such a testing system, an accused cannot agree to the admissibility of such evidence, then object to its admission solely because of unfavorable results. We believe the better rule is to permit the introduction of the results of a polygraph examination upon the prior stipulation of the parties, after having satisfied the trial court that the examiner was qualified and the test was conducted under proper conditions. This is consistent with the holding in a growing number of cases which have considered the effect of a stipulation on the admission of polygraph tests. Proper weight is attached to the giving of a stipulation, but discretion is vested in the trial court to exclude the evidence if the test is not conducted fairly. [Citations omitted.]" (218 Kan. p. 760.)

The court then noted the defendant had stipulated to the admissibility; the examiner testified extensively as to his qualifications and the operation of the machine, as well as testifying to the questions he asked the defendant and his opinions as to the truthfulness of defendant's answers, all present here. This court then held there was no error in admission of the results.

The defendant asks this court to establish certain procedural safeguards not present in *Lassley.* He states the stipulation should be reduced to writing, signed by counsel and the defendant, and filed of record. After examining the authorities set forth in *Lassley* it is apparent that the purposes of requiring a written stipulation are to prevent fraudulent claims of oral stipulations, to prevent disputes as to the existence and terms of such agreements, and to relieve the court of the necessity of determining such disputes. See also 83 C.J.S., Stipulations, § 4, p. 4. When a stipulation is made in court on the record it is unnecessary to require the writing. See *State v. Bennett,* 222 Kan. 358, 360, 564 P.2d 540 (1977); 83 C.J.S., *supra,* § 4, p. 6; 73 Am. Jur. 2d, Stipulations, § 2, p. 537.

Rule No. 163 of the supreme court states:

"A court is not required to give effect to stipulations between counsel, or oral admissions of counsel, which are not reduced to writing and signed by the counsel to be charged therewith, *or which are not made a part of the record.*" (220 Kan. lxvi. Emphasis supplied.)

A stipulation to admit into evidence polygraph test results entered in court and on the record is as binding on the parties as if the same had been reduced to writing, signed by the parties, and filed of record.

This court has previously recognized that a trial court may relieve the parties from the effect of any stipulation to prevent manifest injustice and assure the parties a fair trial. (*State v. Bennett,* supra, p. 360; *State v. Gordon,* 219 Kan. 643, 651, 549 P.2d 886 [1976]; *State v. Craven,* 215 Kan. 546, 548, 527 P.2d 1003 [1974].)

The appellant contends the court should have advised him of the reliability of the polygraph test and the possibilities for error in the results before such a stipulation should be permitted to bind him. The reliability of the test and possibilities for error are matters of individual opinion as pointed out in *State v. Lassley,* supra. Of course, it must appear that the stipulation to submit to the test and have the results admitted in evidence was freely entered into with full knowledge of the right to refuse the test and of the consequences involved in taking it. (*State v. McDavitt,* 62 N.J. 36, 297 A.2d 849 [1972].)

The court did question the appellant and counsel in this case. They were permitted to confer in private. It was counsel's duty at that time to advise his client as to these matters. Then, when appellant was being prepared by the examiner to take the test he read and signed a polygraph examination release. The release recited that appellant was voluntarily submitting to the tests, that he understood the test involved the use of mechanical and electronical apparatus which recorded emotional and physiological responses, and that the general nature of the examination had been explained to him.

We have considered the foregoing matters. The results of a polygraph examination may be admitted into evidence when stipulated by both the state and the defendant provided: (1) The stipulation is in writing and filed for record or entered into in court and made a part of the record; (2) the defendant voluntarily and knowingly consents to such examination; (3) counsel and the defendant stipulate the results are to be admissible in evidence; (4) the trial court is satisfied that the examiner is properly qualified to administer such tests and that the examination has been conducted under proper conditions; and (5) the opposing party is

given adequate opportunity to cross-examine the polygraph examiner on his qualifications and training, and on the limitations and the possibilities for error in the results obtained.

After reviewing the record we believe the foregoing guidelines for permitting the results of a polygraph examination to be admitted into evidence were substantially met in this case and no error has been shown.

Appellant's next point concerns the failure of the trial court to sustain his motion to strike the initial testimony of appellant which mentioned his willingness to take the examination.

It should be noted that appellant's counsel did not object to the testimony when it came into the record as an unresponsive answer to a question by his counsel. A defendant has nothing to lose by agreeing to such a test, knowing the results are not admissible without a later stipulation. (*State v. Emery,* supra.) It was not until after the polygraph test results were available and about to be introduced into evidence that this motion was lodged. The proper procedure would have been for appellant's counsel to have made his request when the unresponsive answer improperly interjected the inadmissible testimony into the record.

It was the defendant who insisted on getting this offer to take a lie detector test before the jury in an effort to prove his innocence. Once this testimony was heard by the jury, its impact was obvious. A motion for a mistrial would probably have been denied in favor of the alternative, striking the testimony and instructing the jury to disregard it. However, in such case a question will always linger as to whether the testimony can be erased from the memories of the jurors. The prosecutor can hardly be faulted in the present case in asking the defendant if he was presently willing to take such a test. It is clear the defendant and his attorney provoked the situation. When a defendant opens up an otherwise inadmissible subject, the state may further explore the subject on cross-examination. (*State v. Ralph,* 217 Kan. 457, Syl. ¶ 8, 537 P.2d 200 [1975]; *State v. McDavitt,* supra.) Therefore, it was not error to refuse to strike defendant's original testimony. The motion to strike was not made until after the polygraph test results had been obtained and were about to be introduced on stipulation. This was not the proper time to have made the motion.

Appellant's third and final point is that his attorney was not present in the room when the polygraph examination was ad-

ministered and this denied him the assistance of counsel at a critical stage of the proceedings. Counsel was present at all times during the trial proceedings. He accompanied the defendant to the door of the examination room. Thereafter the defendant and the examiner were alone during the examination. Defendant read and signed the two forms; one was the *Miranda* rights form.

The *Miranda* form which he signed advised him he could remain silent and he had the right "to talk to a lawyer for advice before we ask you any questions. . . ." He was also advised he could refuse to answer questions and talk to a lawyer at any time. Defendant does not contend that he requested the assistance of his counsel during the testing. He cites no cases which would uphold this contention under these circumstances. The trial proceedings were recessed during the time the polygraph examination was being administered. This was not a critical stage in the criminal proceedings which requires the presence of counsel and we believe defendant could and did effectively waive counsel during this time. No unfair tactics are claimed and nothing has been pointed out in the test examination to show prejudice to the defendant other than the test results, which favored the prosecution. This point is without merit.

The judgment is affirmed.