No. 71,560

GLORIA HARDESTY, *Appellee*, v. COASTAL MART, INC., *Appellant*.

(915 P.2d 41)

Opinion filed April 19, 1996.

*Joseph W. Kennedy*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Tim J. Moore*, of the same firm, was with him on the brief for appellant.

*Lee H. Woodard*, of Woodard, Blaylock, Hernandez, Roth & Day, of Wichita, argued the cause, and *James Z. Hernandez*, of the same firm, was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This case reviews district court discretion in the context of party stipulations in a pretrial order. The focus is on admissibility

of medical records of six previous falls as evidence of habit in a trip and fall personal injury case. The plaintiff, Gloria Hardesty, was injured in a fall after purchasing gasoline at a station owned by defendant, Coastal Mart, Inc. (Coastal). The jury assessed 90% fault against Coastal and 10% against Hardesty. Hardesty was awarded damages of $177,712.48, including $150,000 for pain and suffering. Coastal appealed. In an unpublished opinion, a divided Court of Appeals affirmed the district court. We granted Coastal's petition for review. Our jurisdiction is under K.S.A. 20-3018(b).

We find no error and affirm the Court of Appeals and the district court.

### The Issue on Review

Did the trial court err in releasing Hardesty from her pretrial order stipulation that all her medical records would be admissible? The answer is "no."

### FACTS:

Hardesty filled her car with gas at a Coastal station at Derby, Kansas. She went into the store and paid for the gasoline. As she walked back to her car, she watched another car pulling up to the pumps. She did not see a 1- to 2-inch deep hole in the concrete pavement and fell forward on her hands and knees. She sat there for a short time, then got up and drove home. Her right arm hurt; she took three Tylenols and went to bed. The next day, she went to work. Her right arm was still painful. She thought she had sprained her wrist. She reported her fall to the Coastal store manager and, about a week later, went to the store to fill out a report. Hardesty did not seek medical attention for her injury until 12 days after her fall.

At the pretrial conference, counsel for both parties reached a stipulation contained in the pretrial order that: "[a]ll medical records of plaintiff are admissible. All medical bills are admissible without records custodian testimony; however, the reasonableness and necessity thereof is not stipulated."

Hardesty later filed a motion in limine requesting "an order prohibiting the defendant from presenting evidence by direct examination or cross-examination of the plaintiff's medical illnesses and/

or opinions which are not relevant to the plaintiff's medical condition in this case."

Hardesty filed the motion after an exchange of exhibits. Hardesty's attorney (Hernandez) learned that Coastal's attorney (Moore) intended to use medical records concerning illnesses and injuries dating back to the early 1980's which were unrelated to her current injury. These records included nasal surgery, a hysterectomy, diabetes, and left wrist and ankle injuries. Hernandez had no objection to Moore's use of medical records concerning a prior right thumb problem but objected to the use of any other prior medical records. Moore responded that he relied upon the stipulation that all medical records were admissible in preparing for trial. Hernandez understood the stipulation only to cover medical records for the current injury and any prior relevant medical records—not all prior medical records. Moore argued the prior medical records showed Hardesty had six injuries from falls between 1987 and the current injury. According to Moore, those records were relevant to show a habit of "not looking where she's going and falling down and injuring herself as a result." We note that one of the instances did not involve a fall, but an injury caused by a door knob.

Before jury voir dire, the district judge ruled that Coastal could: (1) introduce medical records concerning the prior right thumb problem and (2) go into the facts concerning Hardesty's prior falls but not the injuries. He withheld ruling on whether the medical records concerning those prior falls would be allowed.

During the voir dire, Moore said:

"Now, I want to touch on a matter that's going to come up in the evidence, and probably in the examination of the plaintiff, and there's going to be evidence that the plaintiff has had prior instances where she has fallen down and injured herself. Now, I'm talking about instances prior to the time that her trip and fall happened at Coastal Mart. In fact, the evidence is going to be—I'm going to put this evidence on, and I want to know if anyone is going to be offended that I'm going to put on evidence that there have been six prior occasions where she has tripped and fallen, injured herself?"

One jury panel member responded, "I think so. I think we're trying this case right here and not six prior ones. . . . I'm just saying that

this is the case that's supposed to be tried and not—no matter how many accidents that were before; it shouldn't come into account."

Moore then asked, "If I put on evidence that this particular plaintiff maybe has a habit of not looking where she's going, and there are prior instances of that, I just want to know if you're going to hold it against me . . . ." The jury panel member responded in the negative.

Following voir dire, Hernandez asserted that evidence concerning prior falls should not be admissible. He requested that the matter be considered before opening statements were made. The district judge preferred to wait, but instructed the parties not to bring up the prior falls in their opening statements. Despite the instruction, Hardesty's counsel referenced previous falls in his opening statement:

"The evidence in this case will be, and what I anticipate that the defendant in this case will do, and I'll tell you what they'll do. They will say that Gloria Hardesty should have been—should have seen this hole when she drove in the station. They'll say Gloria Hardesty should have seen this hole when she put the cap back in her tank and walked towards the Mart store. They will tell you that she should have seen it and been looking out for it when she walked back to her car. *And they'll represent to you, or insinuate that she's clumsy, had previously [sic] falls and, therefore, she fell on this occasion.*" (Emphasis added.)

Coastal did not mention the prior falls in its opening statement.

The next day, the district court reversed its ruling, stating: "But I'm not going to allow other slip and fall instances to come in, unless plaintiff's counsel would open up the area, and then they would be fair game for defense counsel."

Without mentioning Hardesty's opening statement reference to previous falls, Coastal requested that the district court reconsider its ruling, stating:

"[MR. MOORE:] I'm in a real bind, Your Honor. And, frankly, I prejudiced my client in front of the jury by referring to it, in reliance upon the pretrial order, and I think the case law in Kansas gives me a right to rely upon the pretrial order.

"Now, I'm willing to concede that the compromise we reached yesterday, those things which are clearly irrelevant [such as medical records concerning the nasal surgery, diabetes, the hysterectomy, etc.], I'm not even going to refer to, you know, and I'm not going to hold Mr. Hernandez to that stipulation on those kinds of matters. *But with respect to the six prior falls, it's absolutely critical to my*

*defense in this case,* Your Honor, and I think the defense is extremely prejudiced if I'm precluded from relying upon that stipulation." (Emphasis added.)

The district judge did not change his ruling, but acknowledged:

"Well, okay. Tim [Moore], I realize that I put you behind the eight ball. I put Jim [Hernandez] behind the eight ball on some things. . . . I realize that during the course of the trial—during the course of the trial so far, which has only been opening statements, certain mention has been made of—of other falls by Ms. Hardesty. I can't go back and blot that out. I don't want to give an instruction that would limit the jury that they would not consider anything said on voir dire or opening about prior falls. But once I weighed the facts in my mind and I researched it in my mind, in my office, I thought this would be fair. This is the route I'm going to go."

However, the judge did expand Coastal's right to inquire into prior medical problems. Coastal could ask Hardesty about her past use of a left wrist splint without going into the cause of the injury.

Hardesty testified about her injury and following medical treatment. She also called two physicians who treated her injury. Testimony from Coastal employees was uniformly damaging to Coastal's position. The store clerk on duty at the time of the injury testified that the pavement defect existed during her employment at the store from December 1988 to April 1992 and gradually worsened without repairs being made. The evidence also showed that a Coastal customer fell and was injured at the same location in 1989. Customers complained when it rained or when water collected in the pavement defect and their feet got wet. The Coastal store manager had previously explained to her area sales manager that the pavement needed to be repaired. She had given a photograph of the defect to him. The area sales manager did not recall receiving any complaints or photographs of the defect but admitted making monthly visits to the premises to inspect the pumps. He further acknowledged that the defect should have been immediately repaired.

## The Stipulation

Coastal's claimed district court error requires not only our analysis of the circumstances surrounding the stipulation but also application of the rules of evidence to the admissibility of the six prior falls or injuries.

While the general rule is that trial courts are bound by stipulations of the litigants, courts are warranted in relieving parties from stipulations improvidently or mistakenly made. *State v. Craven,* 215 Kan. 546, 548, 527 P.2d 1003 (1974). In *Craven,* we summarized the circumstances justifying such relief:

" '[A] trial court may, in the exercise of judicial discretion, upon proper cause shown, relieve a party from a stipulation entered into in the course of a judicial proceeding when it appears that such relief is necessary to prevent manifest injustice to the parties seeking it, and that the granting of such relief will not place the adverse party at any disadvantage by reason of having acted in reliance upon the stipulation. It has thus been held that a stipulation should only be set aside after placing the parties in approximately the same positions in which they were or in positions of substantially equal advantage. And on appeal, the determination of the trial court as to the propriety of granting such relief will not ordinarily be interfered with, except where a manifest abuse of discretion is disclosed . . . .' " 215 Kan. at 548 (quoting 73 Am. Jur. 2d, Stipulations § 13).

Parties may be relieved of their stipulations for mistake, accident, surprise, or inadvertence. *Runyon v. City of Neosho Rapids,* 2 Kan. App. 2d 619, Syl. ¶ 2, 585 P.2d 1069 (1978) ("It is apparent that the city's concept of what was required of it by the stipulation and order was entirely different from the concept entertained by the plaintiffs and the trial court." 2 Kan. App. 2d at 621-22.).

A stipulation to admissibility of evidence means that the party agreeing to the stipulation waives any objection to the evidence. Hardesty's motion in limine poses an objection to the admissibility of prior medical records not related to her current injury. Hardesty sought release from a stipulation she claimed was ambiguous and which she reasoned had been misinterpreted by Coastal.

We approach the issue by determining whether the circumstances justifying release from a stipulation, set forth in *Craven,* are present.

Coastal argues that the Court of Appeals ignored precedent in finding the stipulation unenforceable, citing *State v. Roach,* 223 Kan. 732, 576 P.2d 1082 (1978), and *White v. State,* 222 Kan. 709, 568 P.2d 112 (1977). In *Roach,* we affirmed the district court's admission of the results of a polygraph test in a criminal case, under an oral stipulation made on the record during trial between the prosecutor and the defendant. Polygraph results are not admissible

absent a stipulation. In *White*, the defendant pleaded not guilty but stipulated to the facts and waived a jury trial. After his conviction, he filed a K.S.A. 60-1507 motion to vacate his sentence, which was denied. We affirmed, noting that stipulations as to evidence in criminal cases are permissible under Kansas statutes. 222 Kan. at 713. *Roach* and *White* illustrate the general rule that evidentiary stipulations are enforceable. Neither case is persuasive support for Coastal's position. *Roach* deals with a highly specialized topic, admissibility of polygraph test results in a criminal case. Roach contended, on appeal, that admissibility of the test results required a written stipulation and a determination that the stipulation was voluntarily and freely made. In *Roach*, the stipulation was made on the record. We found the requirement of voluntariness was met and that no error had been shown. 223 Kan. at 736-37. *White* concerned a stipulation of facts subject to neither a claim of misunderstanding nor of ambiguity. *Roach* and *White* do not parallel this case.

An abuse of discretion standard of review applies to a trial court's ruling on the enforceability of a stipulation. See *Craven*, 215 Kan. at 549. *Craven* sets forth several circumstances justifying release from a stipulation: (1) Relief is necessary to prevent manifest injustice; (2) relief will not disadvantage the adverse party relying on the stipulation; and (3) the parties can be returned to the same positions or to substantially equal advantage. 215 Kan. at 548.

Coastal argues Hardesty made no showing that the stipulation was entered into by mistake or that relief from it was necessary to prevent manifest injustice. The record indicates the contrary.

## Mistake

At the hearing on Hardesty's motion in limine, Hernandez stated he understood the stipulation meant that all medical records concerning the present injury and any prior relevant medical records would be admissible, but the court would still determine what was relevant. Hardesty also argues that the stipulation is ambiguous in view of the sentence following the stipulation in question, which provides: "*All medical bills are admissible without record custodian testimony; however, the reasonableness thereof is not stipulated.*"

Hardesty believes the medical bill sentence related only to medical bills for Hardesty's injury from the fall on Coastal's premises, not to bills for prior medical problems. Thus, the stipulation that "[a]ll medical records of plaintiff are admissible" should also relate only to those medical records concerning the Coastal injury. Hardesty's understanding of the stipulation obviously differed from Coastal's.

Coastal asserts it should have been obvious to Hardesty that Coastal intended to bring in evidence of the prior falls through the medical records in view of Coastal's witness list in the pretrial order (including medical personnel who treated Hardesty's prior injuries). The transcript of the pretrial conference shows that Coastal listed witnesses obtained from Hardesty's prior medical records, but it does not reveal that Coastal intended to use the medical records and those witnesses to bring out Hardesty's prior falls.

Coastal believes that a letter Moore wrote to Hernandez demonstrated the intention to use Hardesty's prior falls as part of Coastal's theory of defense. The letter summarizes Hardesty's medical history and mentions the prior falls. However, the letter does not say that Coastal intended to use the prior falls to establish a habit of Hardesty not watching where she walked.

The stipulation pertained to admissibility of the medical records. The admission of prior falls was not included. The record supports the existence of a mistaken understanding between counsel about what the stipulation meant.

## Manifest Injustice

The question of whether it would create manifest injustice not to grant Hardesty relief from the stipulation goes to the issue of whether evidence of the prior falls would have been relevant and admissible absent the stipulation. If enforcement of the stipulation would allow the presentation of irrelevant and prejudicial evidence to the jury, then it should not be enforced. See 22 Wright & Graham, Federal Practice & Procedure: Evidence § 5194, p. 196 (1978) ("Although no cases have been found, it seems doubtful that the courts would honor an agreement that made irrelevant evidence admissible."). The district judge determined that evidence of the prior falls would be prejudicial. We agree.

A statutory trio guides any analysis of evidence of habit or specific instances of behavior or character.

K.S.A. 60-449 states:

"Evidence of habit or custom is relevant to an issue of behavior on a specified occasion, but is admissible on that issue only as tending to prove that the behavior on such occasion conformed to the habit or custom."

K.S.A. 60-450 provides in part:

"Evidence of specific instances of behavior is admissible to prove habit or custom if the evidence is of a sufficient number of such instances to warrant a finding of such habit or custom."

K.S.A. 60-448 states:

"Evidence of a trait of a person's character with respect to care or skill is inadmissible as tending to prove the quality of his or her conduct on a specified occasion."

See Advisory Committee Notes and Authors' Comments in 4 Vernon's Kansas C. Civ. Proc. §§ 60-448, 60-449, and 60-450 (1965 and 1995 Supp.); 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-449 and 60-450 (1995 Supp.). 1 McCormick on Evidence § 195 (4th ed. 1992); 1A Wigmore on Evidence § 93 (Tillers rev. 1983); see Slough, *Other Vices, Other Crimes: An Evidentiary Dilemma*, 20 Kan. L. Rev. 411 (1972).

We endorse Professor Slough's observations:

"In determining whether the plaintiff or defendant was acting with due care on a given occasion, the great majority of American jurisdictions have long excluded any reference to character, or to specific instances of prior negligence. Such evidence has been inadmissible for the patent reason that relevancy values must yield to almost certain dangers of confusion of ideas, wasted time, undue prejudice, and surprise. Because even the most careful and prudent person may be inattentive and neglectful on occasion, a few scattered instances of indifferent behavior will scarcely cast valid light upon his general disposition. From considerations of relevancy and policy, therefore, evidence of specific occasions of indiscretion must be rejected to make way for the reception of reasonable proof."

. . . .

"The current Kansas rules of evidence, adopted in 1963 and patterned meticulously after the Uniform Rules of Evidence, state the general policy of exclusion with greater clarity." 20 Kan. L. Rev. at 412.

We have applied K.S.A. 60-448, K.S.A. 60-449, and K.S.A. 60-450 to either exclude or admit evidence of habit. See *Pope v. Ransdell*, 251 Kan. 112, 130-31, 833 P.2d 965 (1992) (Allegation of negligent obstetrical care; mother was impeached with expunged criminal convictions relating to her drug use. One conviction was 3 years before the birth and another 6 years after the birth, an insufficient number of instances to warrant a finding of habit under K.S.A. 60-450. Error in admitting the convictions was deemed harmless.); *State v. Gonzales*, 245 Kan. 691, 701, 783 P.2d 1239 (1989) (evidence that victim had habit of meeting strange men, implying that she had gone with another man after the defendant was seen with her, was excluded); *Williams v. Union Pacific Railroad Co.*, 204 Kan. 772, 780, 465 P.2d 975 (1970) (Collision between a railroad switch engine and a gasoline transport truck in the dark; port of entry inspector testified switch engines operating at the crossing at night did not use lights, sound any warnings, or use flagmen. Two police officers who patrolled the area four or five times each evening observed switch engines without lights or flagmen at the crossing. Admission of testimony affirmed. "It must be assumed the trial court determined the testimony showed a sufficient number of such instances to warrant a finding of habit or custom.").

We have held that specific instances of conduct are generally inadmissible as evidence to prove the quality of conduct on any later occasion. *Scogin v. Nugen*, 204 Kan. 568, 576, 464 P.2d 166 (1970).

Coastal wanted to use the prior falls to establish that Hardesty had a habit of "not looking where she is going" while walking. All Coastal had was evidence of six prior injuries, without evidence of what caused them. In addition, six prior falls or injuries over a 3-year time span, even if they were caused by Hardesty not looking where she was going, do not establish a habit. Both Coastal and Hardesty cite and discuss cases from other jurisdictions, notably *Perrin v. Anderson*, 784 F.2d 1040 (10th Cir. 1986); *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519 (11th Cir. 1985); and *Reyes v. Missouri Pac. R. Co.*, 589 F.2d 791 (5th Cir. 1979). As noted by Hardesty, none are helpful to Coastal's position.

The district judge was correct. Hardesty's six prior falls or injuries in 3 years do not establish habit. Also, Hardesty admitted what Coastal argued the six prior falls or injuries would suggest, that she did not see the hole in the pavement.

## Coastal's Reliance

The district judge initially ruled that medical records concerning the prior right thumb injury would be admissible, but withheld ruling on whether the medical records concerning the prior falls could come in. However, Coastal was still to be allowed to go into the prior falls, but not the injuries from them. Coastal was only tangentially interested in Hardesty's prior medical records. What Coastal was really interested in was the right to go into Hardesty's prior falls.

The following discussion took place during the initial hearing on the motion in limine:

"MR. MOORE: Your Honor, the only question is, does she have a habit of looking where she is going, or a habit of not looking where she's going. That's it, that's the only thing I'm trying to prove.

"THE COURT: You don't even want to get the medical in?

"MR. MOORE: I do want to get medical in, Your Honor, but that also, incidentally, I don't think it's a primary basis for their motion, but those medical records will go to the mit—or to her damages."

Coastal relaxed its position on the definition of "all medical records" in arguing that the district judge should reconsider his reversal on prior accidents:

"[MR. MOORE:] I have a real problem, Judge, and I think that a nice compromise was attained yesterday, and that is, I said I agree that there were certain medical records I wasn't interested in using, for instance, her sinus problems, for instance, she had a hysterectomy some years after the accident; those medical records I would concede are absolutely irrelevant and don't go to any issue in the case, just wasn't interested in bringing them in. But orthopedic injuries, Your Honor, on two counts. *Number one, the habit evidence* that Your Honor already expressed himself on. Secondly, on damages, I've got a real question as to why, if the plaintiff wore a brace on her left hand for over year and a half, and that did not impair her ability to engage in the activity that she loved, whereas wearing a brace on her right hand from the time of the accident to the present does." (Emphasis added.)

The record shows that Coastal emphasized the prior falls as evidence of habit and placed less reliance on the medical record stipulation.

## Substantially Equal Advantage

The district judge's final ruling on the motion in limine barred Coastal from using the medical records concerning the prior falls or going into the circumstances of those falls. However, Coastal was allowed to use the prior medical records concerning Hardesty's right thumb treatment. Coastal was also allowed to bring out the fact that Hardesty had previously worn a splint on her left wrist, although prior medical records concerning left arm injuries were not allowed in. The district court allowed Coastal to use any prior medical records or medical facts that the court determined were relevant. The consequence Coastal suffered from the stipulation release was that Coastal could not introduce prior medical records that the district court determined were prejudicial.

Coastal's only defense was that Hardesty did not look where she was going. Coastal intended to use the six prior falls or injuries as habit evidence to suggest that Hardesty did not look when she fell on Coastal's premises. Hardesty testified that she did not see the pavement defect when she fell. The jury determined her comparative negligence to be 10%. Thus, Coastal was able to establish its defense.

Valid grounds exist for not enforcing the stipulation: (1) Hardesty and Coastal did not have a common understanding of what the stipulation actually meant; (2) the trial court would have allowed in irrelevant, prejudicial evidence if the stipulation were enforced, causing manifest injustice; (3) Coastal's reliance on the stipulation was minimal; and (4) the parties were placed in substantially equal advantage, in that Coastal was allowed to use relevant prior medical records and history and Coastal did establish its defense.

We observe that Coastal chose neither to pursue Hernandez's reference to previous falls in Hardesty's opening statement nor to move for a mistrial after the trial court's ruling excluding evidence of prior falls. The trial court did not abuse its discretion by releasing Hardesty from the stipulation.

## Timing of the District Judge's Ruling

Coastal argues it was prejudiced by the timing of the judge's exclusionary ruling. The Court of Appeals' dissent focuses on the timing of the ruling and views it as "not fair" to Coastal. During the jury voir dire, Coastal told the panel members to expect evidence of the prior trip and falls, in reliance on the judge's initial ruling allowing inquiry into those falls. The timing of the district judge's reversal of that ruling after jury voir dire disadvantaged Coastal, because the ruling prevented Coastal from following through with the promised evidence. However, the comments of the jury panel member responding to Coastal's statements during voir dire about the prior falls suggest that at least that juror might not have viewed such evidence favorably.

At the time the district judge reconsidered his ruling, he faced a dilemma. If he held with his original ruling, he would have allowed Coastal to present inadmissible evidence to the jury. Hardesty would have been prejudiced.

The timing of the district judge's reversal of his prior ruling did not prevent Coastal from establishing that Hardesty was comparatively negligent, because the jury found Hardesty to be 10% at fault. Although Coastal was in an unenviable position after already previewing the prior falls to the jury, the district judge's ruling was not an abuse of discretion.

Affirmed.

ABBOTT, J., not participating.

DAVID PRAGER, C. J. Retired, assigned.▌

MCFARLAND, C.J., dissenting: The trial court acknowledged it put the defense "behind the eight ball" by changing the rules after the commencement of the trial. Put in legal terms, this is an admission by the trial court of the major prejudicial effect of its ruling upon the defense. The jury had been told by defense counsel it

would hear evidence òf the plaintiff having fallen and injured herself on six prior occasions. The extent of plaintiff's comparative fault was the main line of defense. A major casualty was defense counsel's credibility before the jury. The trial court shot the defense in the foot and, in essence, told it to hobble along as best it could. The majority finds this does not constitute an abuse of judicial discretion. I disagree. I would reverse and remand for new trial.