NOT DESIGNATED FOR PUBLICATION

No. 121,382

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JULIA ROMAIN,
Special Administrator of the Estate of Jonathan Romain,
*Appellant*,

v.

SHADI HASSAN SHAHOURI,
*Appellee.*


MEMORANDUM OPINION


Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Opinion filed November 20, 2020. Affirmed.


*Matthew L. Bretz*, of Bretz & Young, LLC, of Hutchinson, for appellant.


*William L. Townsley III* and *Audrey D. Koehler*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellee.


Before POWELL, P.J., GREEN and STANDRIDGE, JJ.


POWELL, J.:  This appeal arises out of an automobile accident in which Ghenwa Mcheimech crashed her car into Jonathan Romain's car, resulting in serious injuries to Romain. Romain sued Mcheimech for damages but rejected a settlement offer for the limits of Mcheimech's insurance policy, prompting Mcheimech to declare bankruptcy. Romain subsequently sued Shadi Hassan Shahouri, Mcheimech's husband and owner of the vehicle driven by her, for negligently entrusting his car to her. Shahouri moved for summary judgment, claiming no evidence existed that Mcheimech was an incompetent

1

driver or that he knew or should have known that Mcheimech was an incompetent driver prior to the accident. Romain opposed this motion, claiming postaccident evidence he obtained from a private investigator showing Mcheimech to be a careless driver created genuine issues of material fact precluding summary judgment. The district court disagreed, excluded the postaccident evidence of Mcheimech's alleged careless driving as irrelevant, and granted summary judgment to Shahouri. Romain now appeals these adverse rulings.

Because Romain's postaccident evidence is irrelevant to establishing what Shahouri knew or should have known prior to the accident, the district court did not err in granting summary judgment to Shahouri. Thus, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On May 19, 2017, Mcheimech crashed her car into Romain's car, resulting in Romain suffering serious injuries. At the time of the crash, Mcheimech was a licensed Kansas driver and drove a car owned by her husband, Shahouri.

Later in 2017, Romain filed suit against Mcheimech, and Mcheimech's insurance company offered to settle the case for the policy limit of $1.25 million. Romain rejected this settlement offer, prompting Mcheimech to file for bankruptcy in 2018.

Because the bankruptcy barred Romain from collecting any amounts over the policy limits, Romain sued Shahouri in November 2018, alleging Shahouri, as the sole owner of the car Mcheimech was driving, negligently entrusted the car to her. The petition alleged Mcheimech was an incompetent driver and had a habit of careless driving. Romain's petition included a list of traffic violations purportedly committed by Mcheimech to illustrate her careless driving.

2

On December 14, 2018, the bankruptcy court lifted the automatic stay, allowing Romain's negligence action against Mcheimech to proceed up to the insurance policy limits. Shortly after, the district court consolidated the negligence action against Mcheimech with this negligent entrustment case against Shahouri.

Shahouri then sought summary judgment on the negligent entrustment claim against him. In his motion, Shahouri asserted Mcheimech had been a licensed Kansas driver for five years before the accident and a licensed driver in Lebanon for the seven years before that. Prior to the crash with Romain, Mcheimech had never been in an accident and had received only one ticket for speeding two years before the accident. Shahouri stated he had never witnessed Mcheimech run a stop sign or red light and had never witnessed anything that caused him to have concerns with Mcheimech's driving.

In response, Romain did not contradict most of the facts asserted by Shahouri but did disagree with Shahouri's assertion that Shahouri had no reason to believe Mcheimech was an incompetent or habitually careless driver. For support, Romain attached two exhibits to his response—Shahouri's deposition, taken after Shahouri had filed his summary judgment motion, and an affidavit from Joseph Schillaci, a private investigator who followed Mcheimech several months after the accident and observed her driving.

Shahouri testified in his deposition that he had frequently witnessed Mcheimech drive and was familiar with her driving habits. Shahouri said Mcheimech was a safe driver before the crash and was a safe driver after. Shahouri admitted he was aware that Mcheimech had received a speeding ticket and he had paid the ticket.

In his affidavit, Schillaci said he followed Mcheimech six times, with the first time occurring on December 13, 2017, and the last time on February 9, 2018. One time he followed her for only a few minutes because he had to stop at a red light, but he did see Mcheimech run the stop sign in her neighborhood before the surveillance ended. On

3

another occasion, Schillaci did not see Mcheimech commit any major traffic infractions. Schillaci detailed the traffic violations he witnessed the other four times he followed Mcheimech—primarily consisting of running stop signs or red lights, talking on her cell phone while driving, crossing the center line, and almost hitting the curb.

Romain's principal argument in opposition to summary judgment was that as Shahouri admitted to being familiar with Mcheimech's driving habits and Schillaci's affidavit showed Mcheimech to be a careless driver, Shahouri was in fact aware that Mcheimech was a habitually careless driver when Shahouri let Mcheimech drive his car on the day of the accident.

Shahouri replied that his statements of uncontroverted fact in support of summary judgment were consistent with his deposition testimony. Shahouri also argued Schillaci's observations, which all occurred more than six months after the accident, were not relevant to Mcheimech's driving at the time of the accident.

At the hearing on Shahouri's summary judgment motion, the district court found Schillaci's testimony would be inadmissible because it was neither relevant nor material. It also found most of Shahouri's statements to be uncontroverted. As a result, the district court granted Shahouri summary judgment. Following the grant of summary judgment, the district court separated the negligence action against Mcheimech from the negligent entrustment case against Shahouri, thus allowing Romain's appeal.

While the case was pending on appeal, Romain passed away and the Estate of Jonathan Romain was substituted as the plaintiff. A show cause order was issued by our court ordering that a proper party be substituted because an estate lacks the legal capacity to sue or be sued. See *Vorhees v. Baltazar*, 283 Kan. 389, 395, 153 P.3d 1227 (2007). Julia Romain, Romain's widow and special administrator of his estate, was substituted as

4

the appellant. For ease of reference and readability, we will continue to refer to Romain as if he were still alive and prosecuting this appeal.

ANALYSIS

Romain raises two arguments on appeal. First, he argues the district court erred in granting summary judgment because disputed material facts exist regarding whether Shahouri knew Mcheimech was an incompetent or habitually careless driver. Second, he argues the district court erred in excluding evidence of Mcheimech's habit of careless driving, specifically, Schillaci's affidavit detailing his observations of Mcheimech's careless driving.

DID THE DISTRICT COURT ERR IN GRANTING
SHAHOURI'S SUMMARY JUDGMENT MOTION?

Romain argues the district court erred in granting summary judgment because there were controverted facts from which a rational juror could have found Shahouri knew or should have known Mcheimech was an incompetent or habitually careless driver. Romain argues Shahouri admitted he knew Mcheimech's driving habits and the evidence shows Mcheimech was a careless driver. On the other hand, Shahouri asserts the evidence in this case does not establish any basis for concluding Mcheimech was an incompetent driver. Shahouri argues there is no evidence he knew or should have known that his wife was an incompetent driver. Alternatively, Shahouri asserts that even if Schillaci's affidavit outlining postaccident incidents of Mcheimech's alleged careless driving is considered, there is still no evidence that Shahouri knew she was an incompetent driver prior to the accident.

A.     *Standard of Review*

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Patterson v. Cowley County*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

When considering summary judgment, courts must refrain from passing on credibility or from weighing the evidence. *Esquivel v. Watters*, 286 Kan. 292, 295-96, 183 P.3d 847 (2008). "If the moving party shows the absence of facts to support an essential element of the nonmoving party's claim, that nonmoving party 'has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case.' [Citation omitted.]" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 623, 345 P.3d 281 (2015). If there is a genuine issue of material fact, then summary judgment should be denied. *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015). Direct evidence is not required to survive summary judgment; circumstantial evidence may be considered. 301 Kan. at 768. But "speculation is . . . insufficient to avoid summary judgment." *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, 960, 186 P.3d 829 (2008).

Courts should be cautious in granting summary judgment in negligence actions. *Sanchez v. U.S.D. 469*, 50 Kan. App. 2d 1185, 1192, 339 P.3d 399 (2014). Summary judgment is generally only proper in negligence actions when the only questions

6

presented are legal ones. *Martin v. Naik*, 297 Kan. 241, 245, 300 P.3d 625 (2013). If the plaintiff does not provide evidence of an essential element to a negligence case, then summary judgment is appropriate. *Thomas v. Board of Shawnee County Comm'rs*, 293 Kan. 208, 221, 262 P.3d 336 (2011).

B.      *Claim of Negligent Entrustment Properly Denied*

Following a hearing, the district court granted Shahouri's motion for summary judgment on the negligent entrustment claim, finding there was no evidence of Mcheimech's incompetent driving or that Shahouri knew or should have known Mchmeimech was an incompetent driver.

To establish negligent entrustment, a plaintiff must prove four elements:  "(1) an entrustment of a chattel, (2) to an incompetent entrustee, (3) with knowledge or reason to know of the entrustee's incompetence and, (4) the entrustee's incompetence while using the chattel is the cause in fact of injury or damage to the entrustee and/or another." *Martell v. Driscoll*, 297 Kan. 524, 532, 302 P.3d 375 (2013).

In the context of an automobile accident,

"[a] claim of negligent entrustment is based upon knowingly entrusting, lending, permitting, furnishing, or supplying an automobile to an incompetent or habitually careless driver. An incompetent driver is one, who by reason of age, experience, physical or mental condition, or known habits of recklessness, is incapable of operating a vehicle with ordinary care. [Citations omitted.]" *McCart v. Muir*, 230 Kan. 618, 620, 641 P.2d 384 (1982).

See also *Priestly v. Skourup*, 142 Kan. 127, Syl. ¶ 2, 45 P.2d 852 (1935) ("The owner of an automobile who lends it to one whom he knows to be an incompetent, careless, and reckless driver, or had reasonable cause to know or believe him to be such, is guilty of

negligence . . . and is liable to third parties who may be injured by such driver in the negligent operation of such automobile."); *Barber v. Rhoades*, No. 64,092, 1990 WL 10507665, at *2 (Kan. App. 1990) (unpublished opinion) (incompetent driver includes habitually careless driver).

In *Martell*, the Kansas Supreme Court adopted the description of negligent entrustment from the Restatement (Second) of Torts § 390:

> "'One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.'" 297 Kan. at 529-30.

The Restatement's language establishes a car owner has a duty not to give control of the car to a person whom the car owner knows or has reason to know is incompetent or incapable of properly driving the car. A car owner may not assume a person will drive the car properly if the facts known or should be known to the owner indicate the person is unlikely to do so. See 297 Kan. at 530; Restatement (Second) of Torts § 390, comment b.

Thus, to establish negligence on the part of Shahouri, among the elements Romain had to prove was that Mcheimech was an incompetent driver and that Shahouri knew or had reason know of Mcheimech's incompetent driving. The district court found Romain had failed to present facts to support either element of his negligent entrustment claim. We agree.

Romain discusses several disputed facts. However, all the disputed facts find their genesis in Schillaci's affidavit, which, as we will discuss, was properly excluded from evidence by the district court. When the allegations arising from the excluded affidavit are removed, Romain does not contradict any of Shahouri's facts. The evidence in the

record contained Shahouri's affidavit and his deposition. In both, Shahouri asserted Mcheimech was a safe and careful driver. Shahouri was very familiar with Mcheimech's driving and had no concerns about her driving ability. Absent Schillaci's affidavit, Romain does not point to anything in the record that proves Mcheimech was an incompetent driver besides receiving a single speeding ticket two years before the accident. Without any evidence to show Shahouri knew or should have known Mcheimech was an incompetent driver—or, indeed, any evidence that Mcheimech was an incompetent driver—Romain cannot prevail on his negligent entrustment claim. Shahouri was entitled to a judgment in his favor as a matter of law.

C.      *Evidence of Postaccident Careless Driving Properly Excluded*

Romain counters that Schillaci's affidavit outlining postaccident incidents of Mcheimech's careless driving creates genuine issues of material fact precluding summary judgment. He argues the district court erred by excluding this evidence as irrelevant due to it being postaccident because K.S.A. 60-450 does not limit habit evidence to incidents occurring before the wreck. Under the plain language of the statute, Romain argues, this habit evidence was admissible. Shahouri responds that observations of Mcheimech's driving over six months after the accident are not relevant to show whether Shahouri knew Mcheimech was an incompetent driver on the day of the accident.

We review a district court's decision to exclude evidence for abuse of discretion. *State v. Ross*, 310 Kan. 216, 224, 445 P.3d 726 (2019). The same standard applies to evidentiary rulings made in the context of summary judgment motions. See *Kuxhausen v. Tillman Partners*, 291 Kan. 314, 321, 241 P.3d 75 (2010). Discretion is abused when a "'judicial action is (1) arbitrary, fanciful, or unreasonable; (2) based on an error of law; or (3) based on an error of fact.'" *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). The party alleging an abuse of discretion bears the burden to establish such an abuse existed. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

In his memorandum opposing summary judgment, Romain attached Schillaci's affidavit detailing the instances of Mcheimech's careless driving observed by Schillaci. Schillaci observed Mcheimech's driving six times between December 2017 and February 2018. Romain claimed this affidavit contained admissible habit evidence, but the district court ruled it was inadmissible because the observations occurred several months after the accident. Romain argues K.S.A. 60-450 does not restrict habit evidence to instances of habit occurring before the accident.

"Evidence of habit or custom is relevant to an issue of behavior on a specified occasion, but is admissible on that issue only as tending to prove that the behavior on such occasion conformed to the habit or custom." K.S.A. 60-449. "Evidence of specific instances of behavior is admissible to prove habit or custom if the evidence is of a sufficient number of such instances to warrant a finding of such habit or custom." K.S.A. 60-450. A particular person's "care in driving, his practice of driving under the speed limit, and his regard to the rules of the road is testimony which . . . show[s] a regular practice of meeting a particular kind of situation with a specific type of conduct." *Frase v. Henry*, 444 F.2d 1228, 1232 (10th Cir. 1971). Thus, evidence of a person's driving habits is probative toward the issue of whether that driver was negligent on a particular occasion.

In its ruling, the district court mentioned it was unsure whether Schillaci's affidavit contained enough incidents to show Mcheimech had a habit of careless driving. "A habit 'designates an essentially mechanical course of action.'" *Frans v. Gausman*, 27 Kan. App. 2d 518, 523, 6 P.3d 432 (2000). For habit evidence to be admissible, there must be enough instances of the action to justify a finding of habit. "Isolated or occasional instances of behavior will not prove habit." *Pope v. Ransdell*, 251 Kan. 112, 130, 833 P.2d 965 (1992).

10

Schillaci followed Mcheimech six times while she was driving. On one of those occasions, Schillaci got stuck at a red light and was unable to follow Mcheimech, but he did see her run a stop sign exiting her neighborhood before he lost her. Another time, Schillaci followed Mcheimech for 24 minutes and did not observe her commit any major traffic infractions. The other four times Schillaci followed Mcheimech, he observed her run stop signs or red lights and commit other traffic violations. Overall, Schillaci observed Mcheimech run stop signs or red lights on five occasions over a three-month period.

There are cases which state that evidence a person acted in a certain manner five times is insufficient to establish the action was mechanical and therefore habit evidence. See, e.g., *State v. Gaines*, 260 Kan. 752, 766, 926 P.2d 641 (1996) (holding ex-wife's testimony that she and defendant had sex on regular basis during their one-year marriage and he sucked her big toe on five occasions was not sufficient to establish defendant had habit of toe sucking), *abrogated on other grounds by State v. Carr*, 300 Kan. 1, 331 P.3d 544 (2014); *Hardesty v. Coastal Mart, Inc.*, 259 Kan. 645, 654, 915 P.2d 41 (1996) (six prior falls or injuries over a three-year time span do not establish a habit). Observing Mcheimech run stop signs or red lights on five different days during a three-month period is arguably not enough to constitute a habit.

But even if we assume that Romain's postaccident evidence of Mcheimech's careless driving constituted sufficient habit evidence under K.S.A. 60-450, this evidence still lacks relevance to Romain's negligent entrustment cause of action.

For evidence to be admissible it must be relevant. *State v. Robinson,* 303 Kan. 11, 218, 363 P.3d 875 (2015). Relevant evidence is "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). Relevance is the threshold for the admissibility of any evidence and "'contains both a materiality element and a probative element.'" *State v. Burnett*, 300 Kan. 419, 427, 329 P.3d 1169 (2014). Evidence is

11

probative if it contributes toward proof and is material if it helps establish a fact at issue and "'is significant under the substantial law of the case.'" *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016).

As we have indicated, the liability of a defendant in a negligent entrustment case is not based upon the negligence of the driver but, instead, revolves around the question of whether the entrustor knew or should have known he was entrusting his vehicle to an incompetent driver. See *McCart*, 230 Kan. at 621. Thus, the principal question in the present case is whether Shahouri knew or should have known about Mcheimech's alleged careless driving habits at the time he entrusted his vehicle to her immediately prior to the accident.

The district court ruled the postaccident evidence was irrelevant and inadmissible. We agree. The car accident between Mcheimech and Romain occurred on May 19, 2017. Schillaci observed Mcheimech's driving six times between December 2017 and February 2018, well after the accident. Nothing in Schillaci's affidavit pertains to Mcheimech's driving at or before the time of the accident; therefore, it provides no relevant evidence to what Shahouri knew or should have known prior to the accident.

Another panel of our court reached the same conclusion in a case with similar facts. In *Barber*, a truck driven by Rhoades turned in front of the vehicle driven by Barber, resulting in injuries to Barber. At the time of the accident, Rhoades was employed by Harshfield as a truck driver. Barber sued Harshfield for damages under a negligent entrustment theory. In dispute was the district court's exclusion of Rhoades' driving record which purportedly contained evidence of driving violations after the accident. The panel held that evidence of driving violations after the accident was irrelevant to prove what Harshfield knew or should have known about whether Rhoades was a habitually careless driver at the time he was hired. 1990 WL 105077665, at *4.

The same is true here. Schillaci's affidavit concerning events which occurred after the accident says nothing about what Shahouri knew or should have known about Mcheimech's driving habits at the time he entrusted the vehicle to her. The district court did not err in excluding the affidavit.

D.     *Summary Judgment Proper Even When Considering Postaccident Evidence*

Even if the district court had considered Schillaci's affidavit, no genuine issue of material fact exists sufficient to justify denying summary judgment. Schillaci's affidavit could have been considered as establishing a genuine issue of material fact as to whether Mcheimech was an incompetent driver, but it provided no evidence to prove Shahouri was aware Mcheimech was an incompetent driver. Romain attempts to bridge this chasm by stitching Schillaci's affidavit to Shahouri's deposition testimony—that he was familiar with Mcheimech's driving habits—to show Shahouri really did know Mcheimech was an incompetent driver. But Romain's argument omits a key point—when discussing his familiarity with Mcheimech's driving habits, Shahouri asserted Mcheimech was a safe and careful driver and he trusted her to drive their kids around. Even when considering the affidavit, there is no evidence in the record to support Romain's assertion that Shahouri knew or should have known Mcheimech was an incompetent driver.

Romain also makes a brief argument that Shahouri's testimony is not credible because he was impeached during his deposition. The alleged impeachment occurred when Romain's attorney asked Shahouri, "You knew before the wreck that Mrs. Mc[h]eimech sped while driving; is that true?" When Shahouri said he did not, Romain's attorney produced Mcheimech's speeding ticket. Shahouri was not impeached. First, the question from Romain's attorney was ambiguous and could be interpreted to mean that Shahouri knew Mcheimech regularly sped while driving. Second, Shahouri was not attempting to hide or deny Mcheimech's speeding ticket. Before his deposition, Shahouri

had acknowledged her speeding ticket in his memorandum in support of his summary judgment motion and his attached affidavit.

Romain provided no evidence to the district court to support his assertion that Mcheimech was an incompetent driver or that Shahouri knew or should have known that Mcheimech was an incompetent driver. Because Romain cannot point to anything in the record to establish a genuine issue of material fact, summary judgment was proper.

Affirmed.