No. 48,577

MAJOR F. WHITE a/k/a MAJOR BELL, *Appellant,* v. STATE OF KANSAS, *Appellee.*

(568 P.2d 112)

Opinion filed July 11, 1977.

*Stephen Kessler,* of Topeka, argued the cause, and *William L. Bryant,* of Hesston, was with him on the brief for the appellant.

No appearance for the appellee.

The opinion of the court was delivered by

MILLER, J.: Major F. White, serving a life sentence for first-degree murder imposed upon him in 1970 by the district court of Harvey County, filed a motion in 1976 to vacate his sentence under K.S.A. 60-1507. The trial court denied relief and petitioner appeals.

He contends that the sentence should be vacated because the sentencing court erred: (1) in failing to comply with K.S.A. 22-3210; and (2) in failing to hear evidence before imposing sentence as required by K.S.A. 21-4501 (*a*).

Petitioner did not take a direct appeal from his conviction, and this is the first time this matter has been before us. The state neither briefed nor argued this appeal.

Briefly, the facts disclosed by the record are these: White appeared before the district court on September 18, 1970, with retained counsel, Charles S. Scott, of Topeka. The information charged White with the premeditated killing of Charmayne Claudia Griffin during the perpetration of a robbery on January 29, 1970. It also charged him with three other offenses, one of which appears to have been aggravated robbery. The information is not included in the record before us.

The trial court had previously appointed a commission to examine White to determine his mental competency. The commission's report had been received and a copy had been furnished counsel. There was no challenge to the report and the court found the defendant competent to stand trial.

Mr. Scott announced that "we would waive a formal reading of the information and enter a plea of not guilty, and . . . we have a stipulation that will be submitted to the Court . . . I think Mr. Sizemore has a motion to make."

County Attorney Sizemore moved the court to strike counts 2, 3 and 4 of the information, and that motion was sustained. The court then had count 1 of the information read, and White entered a plea of not guilty and waived a jury trial. The county attorney then presented the written stipulation, signed by the defendant, his attorney, and the county attorney, which was read into the record. The stipulation is as follows:

"STIPULATION OF EVIDENCE

"NOW ON THIS 18th day of September, 1970, the following Stipulation of Evidence is offered in the above captioned matter, such Stipulation being presented in its present form to the Court with copies to the defendant, Major F. White, a/k/a Major Bell, and to his attorney, Charles S. Scott, and to the State of Kansas and said Stipulation also being read into the record. At the time of hearing the defendant, Major F. White, being present along with his attorney of record, Charles S. Scott, the defendant having been advised of his constitutional and statutory rights and having waived his right to trial by jury and having elected to try this matter to the Court forthwith.

"It is hereby stipulated by and between the parties hereto that the evidence of the State of Kansas, Case No. 2785, State of Kansas vs. Major F. White, a/k/a Major Bell, is as follows:

"That on or about the 29th day of January, 1970, within the City of Newton and County of Harvey, State of Kansas, Major F. White, a/k/a Major Bell, being one and the same as the defendant here appearing in court, did, by use of an unknown make .22 caliber pistol, shoot and kill one Charmayne Claudia Griffin.

"The evidence would further show that the defendant, Major F. White, a/k/a Major Bell, fired two bullets, at close range, into the head of Charmayne Claudia Griffin, firing through a pillow, which he had placed over the head of the victim.

"The evidence would further show, through the testimony of one James Tate, that the victim did not die until the second shot was fired and that, in fact, she moved her head after the first shot was fired. The coroner's testimony would also tend to show that the victim died as a result of the second wound, in that, upon the basis of his medical expertise, he is able to show that the second shot passed upward through the chin and through the base of the skull into the brain.

"The evidence would further show that there was an eyewitness to the shooting, which witness, James Tate, was present at all times and was, in fact, held at gun and knife point prior to, during, and after the shooting occurred and that the said witness, James Tate, was the resident of the property wherein such shooting occurred and that he was robbed of a small amount of money and some beer at the approximate time of the shooting and that the shooting was incident thereto.

"The evidence would also show that neither the witness, James Tate, nor the Victim, Charmayne Claudia Griffin, offered any resistance to Mr. White or his

accomplice and that neither Mr. Tate or the deceased possessed any weapons. It is also stipulated that there would be no evidence justifying the acts of the defendant, nor any evidence of self defense.

"It is stipulated hereby that any evidence of a robbery, or offenses other than the murder, is not intended by the State to include these offenses to be considered by the Court at this time, but merely to show just cause for the invocation of the felony murder rule.

"It is stipulated that all of the elements of the crime of murder in the first degree would be proved through testimony and physical evidence at the disposal of the State if offered in the formal manner.

"Witnesses available are as follows:

"James Tate . . . . . . . Eye Witness

"Chief of Police, Charles Patterson . . Investigatory Officer

"Captain Paul Hastings . . . Investigatory Officer

"Police Officers:
Sgt. Hanke
Officer Anderson
Officer Hind
Deputy Sheriff Kleiman

"Carl O. Tompkins . . . Coroner

"F.B.I. Crime Laboratory expert in Blood Analysis.

"Physical evidence would include:

"1. Photographs taken by Chief Patterson of the scene of the offense.

"2. Pillow and bedding found at the scene.

"3. A sales slip found at the scene of the offense purportedly signed by 'Major White' and dated as of the day before the occurrence.

"It is also stipulated that these acts occurred in Harvey County, thus giving this court jurisdiction and that such offenses took place prior to the enactment of the new Criminal Code.

"In summary it is stipulated by and between the parties that each and every element of the offense of first degree murder, as contained in K.S.A. 21-401, is considered proved by this Stipulation and that the Court in its deliberation on this matter may consider these stipulations and the statements contained therein as evidence.

. . . . . . . . . . . . . . . . .

"THE COURT: Mr. Scott and Mr. White, you have heard a reading of the Stipulation and I note that you had a copy before you, and also Mr. White. The original before the Court bears the signatures as mentioned by the County Attorney, Mr. Sizemore. Is this all correct?

"MR. SCOTT: That is correct, Your Honor.

"THE COURT: Is this correct, Mr. White?

"THE DEFENDANT: Yes."

The court then accepted the stipulation into evidence and made findings as set forth therein. Counsel and the defendant indicated that there was no further evidence and that they knew of no legal cause why judgment should not be rendered. The court addressed the defendant individually and asked if he wished to make a

statement on his own behalf or present any evidence in mitigation of punishment. Thereafter, the court imposed sentence and advised the defendant of his right to appeal, and his right to have an attorney appointed for him in the event he did not have funds to hire one. Throughout the proceeding the court addressed the defendant at various times and offered him opportunities to speak if he wished to do so.

The matters which petitioner here raises may properly be classified as "trial errors." Our rule 183 (220 Kan. LXVIII), relating to proceedings under K.S.A. 60-1507 provides in part that:

". . . Mere trial errors are to be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided there were exceptional circumstances excusing the failure to appeal." (183 [c] [3].)

Exceptional circumstances are most often found when it is shown that there have been intervening changes in substantive or procedural law, and that the earlier law or procedure prevented petitioner from being aware of or raising in an earlier proceeding the points now presented. *Dunlap v. State,* 221 Kan. 268, 559 P.2d 788. For a thorough discussion of our exceptional circumstances rule, see Meyer and Yackle, *Collateral Challenges to Criminal Convictions,* 21 Kan. Law Rev. 259, 306.

Petitioner here cites no such changes. He simply states that "at the time I was unaware I could make these arguments on appeal," and that these points were not previously presented because of the "unavailability of legal assistance." Neither of these is a reason which might be classified as an exceptional circumstance; however, in view of the fact that petitioner did not take a direct appeal, we conclude that the ends of justice will best be served by reaching the merits of his motion.

We turn first to his claim that the sentencing court erred in not proceeding under K.S.A. 22-3210. The gist of this contention is that his plea of not guilty, followed by the stipulation, in effect constituted the entry of a plea of guilty and thus the court was required to inform him of the consequences of his "plea" and of the maximum penalty provided by law which might be imposed upon him, and that the court should have determined that the "plea" was made voluntarily with understanding of the nature of the charge and the consequences of the "plea"; and that the court should have determined that there was a factual basis for the "plea."

Before a plea of guilty may be accepted, K.S.A. 22-3210 requires the trial court to inform the defendant of the consequences of a plea of guilty and the maximum penalty provided by law which may be imposed upon the acceptance of such a plea, and to address the defendant personally and determine that the guilty plea is made voluntarily and with understanding of the nature of the charge and the consequences of the plea. The court must also determine that there is a factual basis for the plea. Basically, this procedure follows rule 11, F.R. Crim. P., compliance with which is held to be mandatory upon the federal courts in *McCarthy v. United States,* 394 U.S. 459, 22 L.Ed. 2d 418, 89 S.Ct. 1166, and which procedure is fastened upon the state courts as a requirement of due process. *Boykin v. Alabama,* 395 U.S. 238, 23 L.Ed. 2d 274, 89 S.Ct. 1709. The enactment of K.S.A. 22-3210 followed *Boykin.* See *Widener v. State,* 210 Kan. 234, 237, 238, 499 P.2d 1123.

We have no quarrel with the rule but we conclude that it is inapplicable here. White entered a plea of *not guilty,* and thus he retained all of the rights of such a plea, including the right to appeal upon conviction. The duty of the trial court to advise him of the effects of a possible *guilty* plea terminated upon his entry of a plea of *not guilty.*

The mere fact that White stipulated as to the evidence did not amount to the entry of a plea of guilty. Stipulations between trial counsel—even without the written consent of the parties—are commonplace, and are binding upon the parties represented. Stipulations as to the evidence in criminal cases, waiving jury trial and consenting to trial to the court, are permissible under our statutes. *State v. Kinnell,* 197 Kan. 456, 419 P.2d 870; and see *State v. Teeslink,* 177 Kan. 268, 278 P.2d 591.

We know of no case or statute holding that a trial court must interrogate and advise a defendant, who is represented by counsel, before accepting and approving stipulations as to the evidence, and we are not prepared to initiate such a requirement. The stipulation in this case was in writing. It was prepared and was signed by the defendant and his attorney prior to its presentation to the trial court. It was read aloud to the defendant in the presence of his attorney, Mr. Charles C. Scott, a capable and experienced practitioner of this bar. If petitioner had any objec-

tion to that stipulation, the time for complaint was then, not now.

We note that even now, petitioner is not contending that he misunderstood the stipulation, or that he had insufficient time to discuss it with counsel, or that he was unaware of its effect, or that he entered into it other than freely, understandingly and voluntarily. He does not contend that he was uninformed, overreached, coerced, defrauded, or victimized in any way. We conclude that the trial court did not err in approving the stipulation and that K.S.A. 22-3210 has no application here.

Finally, petitioner contends that the trial court erred in failing to hear evidence before imposing sentence as required by K.S.A. 21-4501. On the contrary, the court had before it the stipulated evidence, which constituted all of the evidence in the case, and which petitioner stipulated was sufficient to establish each and all of the elements of murder in the first degree. There is no merit in this contention.

We agree with the trial court that the record in this case conclusively shows that petitioner is entitled to no relief. The judgment is affirmed.