(610 P.2d 640)

No. 50,277

In the Interest of WILLIE GEISLER, a minor.

Petition for review denied June 20, 1980.

Opinion filed May 2, 1980.

*John C. Humpage* and *John M. Redmon,* of Humpage, Berger and Hoffman, of Topeka, for the appellant.

*Larry S. Vernon,* county attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before ABBOTT, P.J., SWINEHART and MEYER, JJ.

SWINEHART, J.: This is an appeal from a decision of the district court of Cloud County finding the respondent Willie Geisler a miscreant child pursuant to the juvenile code of Kansas, K.S.A. 1977 Supp. 38-802(*c*)(1), and ordering him committed to the Youth Rehabilitation Center at Larned.

Two points are raised on appeal: (1) whether the trial court improperly considered evidence not contained in the stipulation of facts entered into by the parties; and (2) whether under the

stipulated facts, the State proved beyond a reasonable doubt all of the elements of the crime of assault to support the finding that the respondent was a miscreant child pursuant to K.S.A. 1977 Supp. 38-802(c)(1).

The facts, other than those pertaining to procedural aspects of this case, are derived from the stipulation of facts entered into by the parties and accepted by the district court on appeal.

On February 23, 1978, the respondent Willie Geisler, then age 17 and a senior at Concordia High School in Cloud County, was speaking with several of his fellow students in the school library. As he was talking in a loud tone, Loren Edmonds, the supervisor, approached the group and asked Geisler to give him his pass so that Edmonds could note Geisler's deportment thereon should his home room teacher elect to take any disciplinary action regarding the incident. Geisler, in a low, threatening, yet non-angry tone, told Edmonds to "[l]eave me alone, I am graduating and there is going to be assault and battery charges pressed against me." Edmonds again asked Geisler to give him his pass, but Geisler refused. The conversation between the two then increased in tempo. Geisler began using foul language and refused to cooperate with Edmonds. As a result of Geisler's behavior, Edmonds became apprehensive and fearful, and therefore requested the vice-principal in charge of discipline, Mr. Genereux, to intervene. At Genereux's request, Geisler proceeded to Genereux's office, where Geisler was suspended from school for five days and instructed to leave the building.

Nonetheless, Geisler immediately returned to the library where he confronted Edmonds in a very angry manner and intentionally threatened to harm him both by his actions and statements. Geisler spoke in loud, angry tones and used foul language, indicating to Edmonds that he was going "to get him." Edmonds was apprehensive of immediate bodily harm and rose from his desk to confront Geisler, who had the apparent ability to inflict bodily harm upon Edmonds. At that time Genereux and another faculty member entered the library and Geisler was directed to leave the facility, which he did.

As a result of his behavior, Geisler was originally charged under the juvenile code with one count of delinquency based upon K.S.A. 21-3419 (terroristic threat), and one count of miscreancy based upon K.S.A. 21-3408 (assault).

After a hearing on the charges on April 10, 1978, the district

magistrate judge declared Geisler a delinquent and miscreant youth under the acts charged, and ordered him committed to the Youth Rehabilitation Center at Larned pursuant to K.S.A. 1977 Supp. 38-826(a)(7). Pending placement, the sheriff of Cloud County was ordered to detain Geisler at the county jail. Geisler's motion for stay of the order was sustained and he filed a notice of appeal to the district court of Cloud County. After Geisler's notice of appeal was filed, the State amended its petition and dismissed the terroristic threat charge.

On June 21, 1978, Geisler's appeal was heard in the district court. At the proceeding, the parties presented a written stipulation to the court, and the court agreed to accept it after fully inquiring as to the basis for the stipulation. No witnesses testified at the hearing. In response to a question of the trial judge, the county attorney, Mr. Vernon, recited in his own words the substance of the factual allegations which gave rise to the petition. However, his response included some specific details that did not appear in the stipulation. For example, Vernon stated that Geisler pointed to his chin, inviting Mr. Edmonds to fight. Vernon also related some of the foul language that Geisler allegedly used. No objection was made to the receipt of any of these statements.

The district court found that Geisler was a miscreant child under K.S.A. 1977 Supp. 38-802(c)(1) because his actions established an assault under K.S.A. 21-3408. The court committed Geisler to the Youth Center at Larned pursuant to K.S.A. 1977 Supp. 38-826(a)(7) but stayed his commitment to the Center pending final judgment on the appeal.

The apparent intent of Geisler's first argument is to preclude consideration by this court of any facts outside of the stipulation.

There is no dispute between the parties that the stipulation was effective and met all the requirements of Supreme Court Rule No. 163, 225 Kan. lxxi, which provides:

"A court is not required to give effect to stipulations between counsel, or oral admissions of counsel, which are not reduced to writing and signed by the counsel to be charged therewith, or which are not made a part of the record."

Additionally, a stipulation freely entered into is binding on the trial court and the litigants. *State v. Gordon,* 219 Kan. 643, 651, 549 P.2d 886 (1976).

The State and respondent entered into a stipulation which was accepted by the trial court after learning no additional witnesses

would be called. However, the trial court also elicited certain facts from the county attorney, such as the precise language used by the respondent and certain physical movements that he made during his confrontation with Mr. Edmonds, that were not explicitly described in the stipulation. On the basis of *White v. State,* 222 Kan. 709, 568 P.2d 112 (1977), the respondent contends that this inquiry was improper because the stipulated evidence was the only evidence that could be considered. *White v. State,* however, did not hold that no additional evidence could ever be elicited, as respondent suggests. Rather, the court refused to impose a requirement that a trial court must interrogate and advise a defendant represented by counsel regarding the consequences of his plea before it accepts and approves stipulations as to the evidence. In fact, *State v. Gordon,* 219 Kan. 643, recognizes that stipulations may be limited in scope, although such a situation does not exist here. In any event, the respondent's suggestion that the trial court erred by receiving the statements of the county attorney is not properly before this court on appeal, as respondent failed to make a timely, specific objection to the admission of those statements at the trial. K.S.A. 60-404; *State v. Phipps,* 224 Kan. 158, 578 P.2d 709 (1978).

Furthermore, the record is clear that the trial court found that the stipulation alone was sufficient to uphold its finding. Before rendering his decision, the trial judge stated in open court:

"It is the finding of the court that the stipulation of fact as entered into by the parties and further exemplified by the questions of the court, and even without the exemplification of the answers to those questions, the stipulation of facts does in fact sustain the charge of simple assault as that term is defined by the courts of this state."

Accordingly, the respondent's first issue is not subject to review upon this appeal.

The respondent complains that under the stipulation submitted by the parties to the district court on appeal, the State failed to prove beyond a reasonable doubt all the elements of the crime of assault.

To be declared a miscreant under K.S.A. 1977 Supp. 38-802(*c*)(1), a juvenile must have committed an act which would make a person eighteen or over liable for arrest and prosecution for a misdemeanor as defined by K.S.A. 21-3105. The crime of assault, K.S.A. 21-3408, constitutes such an act.

Under the principles of *In re Winship,* 397 U.S. 358, 25 L.Ed.2d 368, 90 S.Ct. 1068 (1970), the State must prove beyond a reasonable doubt all elements of the charged offense which would constitute a crime if committed by an adult to satisfy the essentials of due process and fair treatment in a juvenile adjudicatory proceeding. Although no Kansas cases have been found directly applying this standard, *Pauley v. Gross,* 1 Kan. App. 2d 736, 740, 574 P.2d 234 (1977), *rev. denied* 225 Kan. 845 (1978), acknowledges this requirement.

Therefore, since proof beyond a reasonable doubt is the appropriate quantum of proof to support a finding of miscreancy under K.S.A. 1977 Supp. 38-802(*c*)(1), the standard of review upon appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational fact finder could have found the defendant guilty beyond a reasonable doubt? *State v. Voiles,* 226 Kan. 469, Syl. ¶ 6, 601 P.2d 1121 (1979); *State v. Smith,* 4 Kan. App. 2d 149, 603 P.2d 638 (1979).

To determine whether the evidence contained in the stipulation met this standard, the elements of assault must be first considered.

K.S.A. 21-3408 defines assault as:

"An assault is an intentional threat or attempt to do bodily harm to another coupled with apparent ability and resulting in immediate apprehension of bodily harm. No bodily contact is necessary."

PIK Crim. 56.12, discussed in *State v. Warbritton,* 215 Kan. 534, 527 P.2d 1050 (1974), and *State v. Shuckahosee,* 2 Kan. App. 2d 717, 587 P.2d 923 (1978), lists the elements to be proved on an assault charge as:

"1. That the defendant intentionally (threatened) (attempted to do) bodily harm to _____;
"2. That he had apparent ability to cause such bodily harm;
"3. That defendant's conduct resulted in _____ being in immediate apprehension of bodily harm; and
"4. That this act occurred on or about the _____ day of _____ in _____ County, Kansas.
"No bodily contact is necessary."

Much of the discussion in the respondent's brief concerns his contention that assault may only be established when some physical, overt act on the part of the accused has been proven. To support this argument he relies heavily upon Kansas law prior to

the enactment of K.S.A. 21-3408. Prior to K.S.A. 21-3408, the definition of assault had been evolving in judicial opinions. The Judicial Council note following K.S.A. 21-3408 states that the definition contained therein was used in PIK Civ. 2d 14.01 for tort actions. It also notes that the status of former Kansas law is unclear, citing *State v. Hazen,* 160 Kan. 733, 740, 165 P.2d 234 (1946), also relied upon by respondent.

The comment to PIK Civ. 2d 14.01 also draws from *State v. Hazen,* and as respondent contends, does appear to require a physical action, *i.e.,* assault requires an "apparently violent attempt, or a willful offer with force or violence, to do corporal injury to another, without the actual doing of the injury threatened, as by lifting the fist or a cane in a threatening manner," 160 Kan. at 740. While several Kansas cases have considered the various elements of assault (see, *e.g., State v. Howell & Taylor,* 226 Kan. 511, 601 P.2d 1141 [1979], holding that firing a gun at a person is sufficient to constitute a threat; *State v. Deutscher,* 225 Kan. 265, 589 P.2d 620 [1979], recognizing that an assault charge may be based on an intentional attempt *or* an intentional threat; *State v. Warbritton,* 215 Kan. 534, holding that the fear of harm required is fear of harm to the person threatened and not to a third person), none have been found discussing whether mere threatening language is sufficient to constitute an assault.

Secondary authorities drawing from case law from other jurisdictions also support the respondent's argument that a physical action is necessary. See, *e.g.,* 6A C.J.S., Assault & Battery § 64; 6 Am. Jur. 2d, Assault and Battery § 3.

Despite this established, weighty authority, the definition of assault in the Kansas Criminal Code *seemingly contemplates the possibility of an assault conviction based upon threatening words alone,* especially in light of the definition of threat contained in K.S.A. 1979 Supp. 21-3110(24): " 'Threat' means a communicated intent to inflict physical or other harm on any person or on property."

Both parties have relied only upon the stipulation of facts, which they submitted to the district court, to support their arguments. Respondent alleges that the stipulation is defective for two reasons: (1) there was no showing that respondent possessed any "present" intent to inflict physical injury, and (2) there was no showing of an overt, physical act on the part of the respondent.

The stipulation provided that when the respondent returned to the library after being suspended by Mr. Genereux, he, "talking in loud, angry tones and using foul language indicated to Mr. Edmonds that he was going 'to get him.' Mr. Edmonds became apprehensive of immediate bodily harm." Respondent states that this exchange demonstrated a "future" intent on the part of the respondent and that a "present" intent to inflict physical injury is required. *State v. Holman,* 90 Kan. 105, 132 Pac. 1175 (1913). The State agrees that a "present" intent is vital, but counters that although Geisler's words alone were somewhat ambiguous, the totality of the circumstances established such an intent. For example, Geisler told Edmonds he would "get him" when Geisler returned to the library and confronted Edmonds immediately after having been ordered to leave the building.

An assault conviction requires "immediate apprehension of bodily harm" (K.S.A. 21-3408) on the part of the assaultee (*State v. Warbritton,* 215 Kan. 534). The actor need only intend to communicate to the victim a threat to inflict bodily harm and have the apparent ability to do so, resulting in the immediate apprehension of bodily harm. See *State v. Deutscher,* 225 Kan. 265; *State v. Urban,* 3 Kan. App. 2d 367, 595 P.2d 352 (1979).

Here the words and conduct of the respondent described in the stipulation are sufficient evidence of his intent to inflict bodily harm that resulted in immediate apprehension of bodily harm on the part of Edmonds.

Consideration of the proposition that an assault conviction requires proof of a physical *act* on the part of the accused rather than mere words was given above. As noted, the present statute does not by its language clearly impose such a requirement, contrary to the established case authority. In any event, the stipulation recites that after respondent returned to the library "he confronted Mr. Edmonds in a very angry manner and intentionally threatened bodily harm to Mr. Edmonds *by his actions* and by his statements" (emphasis supplied).

Unfortunately, perhaps, the stipulation is devoid of any specific action that the respondent may have taken. (Examples of such actions were provided in the exchange between the trial judge and county attorney, which is probably why the respondent so adamantly pleads for the court to ignore any evidence in the record not embodied in the stipulation.) Nevertheless, by so

stipulating in this conclusory fashion, respondent has admitted he took some action, albeit of an unknown nature, against Mr. Edmonds. Accordingly, there was sufficient evidence to satisfy any requirement of a physical act that may exist to establish that respondent assaulted Mr. Edmonds.

Based upon the evidence contained in the stipulation viewed in the light most favorable to the prosecution, the trial court correctly found respondent guilty of an assault beyond a reasonable doubt.

The judgment of miscreancy is affirmed.