(2 P.3d 191)
No. 81,937

STATE OF KANSAS, *Appellee,* v. HERBERT DOWNEY, *Appellant.*

Opinion filed April 14, 2000.

*Jessica R. Kunen,* chief appellate defender, for appellant.

*Timothy J. Chambers,* district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before GREEN, P.J., RULON, J., and WILLIAM A. CLEAVER, District Judge, assigned.

GREEN, J.: Herbert Downey appeals from his convictions of one count of rape and two counts of aggravated criminal sodomy. On appeal, Downey argues (1) that the trial court erred in accepting the parties' stipulation; (2) that the trial court erred in denying his motion to suppress the photographic evidence; (3) that the trial court erred in failing to suppress his statement under the Fifth Amendment to the United States Constitution; (4) that the evidence is insufficient to sustain convictions on all three counts; and (5) that the trial court imposed an illegal sentence. We affirm in part, vacate in part, and remand for resentencing.

In September 1994, S.R. was with her grandmother who operated a carnival arcade at the Kansas State Fair in Hutchinson. During the fair, S.R. indicated to her grandmother that Downey had molested her. Downey was a carnival worker who traveled with the family to events and was responsible for operating the photo booth.

In November 1994, S.R. was examined by Dr. James Casey, a pediatrician. Dr. Casey concluded that S.R. had been subjected to repeated sexual intercourse and anal sodomy. Dr. Casey indicated that his physical findings were consistent with a molestation having occurred during the time S.R. was in Reno County, Kansas.

In December 1994, Downey was arrested in Florida on a New York state arrest warrant. Among Downey's personal belongings, Florida police officers found photographs of S.R. performing fellatio on an unidentifiable male adult. In March 1995, after being advised of his *Miranda* rights by a New York law enforcement officer, Downey admitted that he had photographed S.R. performing oral sex on him in the carnival photo booth. During the confession, however, Downey did not admit that the sexual contact occurred in Reno County.

Downey was charged with one count of rape and two counts of aggravated criminal sodomy in Reno County. Before trial, Downey moved to suppress the photographic evidence and his statement to police in New York. In denying the motions, the trial court determined that the photographs and statement were legally obtained.

At trial, Downey waived his right to a jury trial and agreed to be tried on stipulated facts. The trial court found Downey guilty of rape and oral and anal aggravated criminal sodomy.

*The Factual Stipulation*

On appeal, Downey makes several arguments regarding the factual stipulation entered into by the parties at trial. Because the outcome of this case hinges on the factual stipulation, it is necessary to set out the stipulation as well as the associated dialog between the trial court and the parties.

"THE COURT: What are the stipulated facts, gentlemen?

"MR. CHAMBERS [Prosecutor]: Your Honor, the stipulated facts will be as follows: That in September of 1994 in Hutchinson, Reno County, Kansas, [S.R.], was present at the Kansas State Fair with her grandmother and mother. At the time [S.R.] was two years of age . . . . That while at the Kansas State Fair [S.R.] indicated to family that she had sucked Herbie's pee pee and that Herbie had put his pee pee in her pee pee.

"The grandmother . . . would testify that in fact they had an employee that worked for them at the fair by the name of Herbert Downey, the defendant. That [S.R.] referred to Mr. Downey as Uncle Herbie.

"That they did look at the child's vagina and did notice some tearing and some redness.

"That previously at a previous location the child had also indicated that she had sucked Herbie's pee pee, but they, because of the child's age, did not put a great deal of credence in this.

"That while at the Kansas State Fair one of their other employees died and that took a great deal of their attention from the situation. The fair moved on to Arkansas. The child was examined by a physician in Arkansas who indicated they should return to Kansas.

"[S.R.] was brought back to Kansas and on November the 10th, 1994, Dr. James Casey, a local pediatrician, examined [S.R.]. Dr. Casey testified at preliminary hearing and would testify at trial that he conducted an examination of [S.R.]. That in fact he found medical evidence which he believed to be conclusive of repeated sexual intercourse. He based this finding on the gaping of the vagina and the fact that there was no portion of the hymen remaining.

"That over repeated—if sexual intercourse occurred on a sporadic basis there would be portions of the hymen tore that would remain, but if it were continually it would be completely worn away, which is consistent with his findings. The doctor also testified at preliminary and will testify at trial and will be stipulated that in the anal examination typically a person has a retraction of the anus when it is touched, but [S.R.] had the opposite reaction. That when she was touched in the area of her anus it would expand. The doctor testified in his medical opinion based upon his training as a pediatrician and as a board certified pediatrician that the cause of this would be repeated insertions about the anus with the anus accommodating this, causing that widening upon touch. So he would testify and the facts would be in his medical opinion the child had suffered both intercourse and anal sodomy, sexual intercourse and anal sodomy.

"An investigation was conducted. Mr. Downey could not be found at that time. He had left the carnival and moved on. Mr. Downey—a warrant was issued for his arrest out of New York. He was apprehended in Florida in March of 19, oh, excuse me, in December of 1994 he was apprehended on another warrant in the state of Florida. At that time both Officer Cummings and Officer Pakonis of the Florida Sheriff's Department conducted a search of the trailer in which the defendant was located. Within the trailer were photographs of [S.R.] performing oral sex upon a male individual. The items were within the defendant's personal property. Contained with the photograph is a Keno Kansas lottery t-shirt, which the grandmother would testify that the defendant obtained at the Kansas State Fair in 1994, with the lottery booth being next door to their booth, or where they operated at the fair.

"The grandmother would also testify that one of the defendant's responsibilities was in fact to run the photo booth at the fair and that during this period of time he would have had access and control over [S.R.] because of the problem with the other individual dying, that in fact the defendant was responsible for the care and treatment of [S.R.] during this period.

"That in March of 1995 the defendant was interviewed by Robert Saunders of the State of New York, law enforcement officer. Mr. Saunders would indicate that after properly advising the defendant of his rights he did in fact—the defendant indicated that in fact [S.R.] had performed oral sex upon him and he had a [sic] taken a photograph of that fact. The defendant indicated that there were two prior sexual contacts that occurred in the state of Florida. He did not admit to sexual contact in Hutchinson, Reno County, Kansas.

"The grandmother would testify that in fact during the period of time the defendant indicates the photographs were taken in Canada the picture machine was not operating properly and that based on the fact the defendant has the T-shirt on in the photographs that would have had to have occurred in Hutchinson, Reno County, Kansas.

"There would also be statements in addition to the grandmother of both the mother and another family friend that during this period of time [S.R.] indicated to them that Herbie, referring to the defendant Herbert Downey, had in the child's terminology sucked Herbie's pee pee and that Herbie had sucked her pee pee and he had put her—pee pee is the terminology used by the small child.

"That would be the facts that we would be relying upon.

"THE COURT: The — the people who would testify to the last matters are relatives or friends or . . .

"MR. CHAMBERS: The last two individuals, the one is the actual mother of the child . . . the other is . . . the live-in male friend of the grandmother. So they were present with the child in Hutchinson.

"THE COURT: And that they would say that the child was making those statements while they were in Hutchinson?

"MR. CHAMBERS: Yes.

"THE COURT: And that the child made those statements in a present context?

"MR. CHAMBERS: Yes, and that would also be consistent with the injuries they observed to the vagina at the time, which were a present tearing and redness.

"THE COURT: Did the physicians indicate that the physical observations would fit the general time frame also as to when the carnival would have been coming through this area?

"MR. CHAMBERS: That is correct, Your Honor. That was one of the matters brought up at preliminary hearing. There is some difficulty because it appeared over some period of time, but the doctor would certainly indicate it's consistent with that time frame.

"THE COURT: Mr. McCarville [Defense Counsel], basically your stipulation is whatever the facts are necessary to support a conviction on each count?

"MR. MCCARVILLE: I hate to say that, Your Honor. Let me see if I can articulate what we are saying. Mr. Downey does not plead guilty and—

"THE COURT: —I understand that.

"MR. MCCARVILLE: And does not plead no contest. I think that would be implied in saying that the facts are sufficient. These—I believe that everything that Mr. Chambers has said would be things that his witnesses would testify to, at least, on direct examination. So I think that's, that's true."

Then, the defense counsel explained to the trial court why Downey agreed to be tried on stipulated facts.

"MR. MCCARVILLE: . . . . I have advised Mr. Downey that with the Court's rulings on the two motions we had this morning that those items of evidence together with the other circumstantial evidence will probably be sufficient for a jury to find him guilty and I admit that. I mean, that's what I told him. That's what he's basing his decision on the fact that it would probably result with a typical jury panel, list we have here, and with the type of evidence that we have."

In attempting to determine how the stipulated facts should be considered, the trial court asked Downey's attorney the following question:

"THE COURT:. . . . The question is; you are basically stipulating that the facts as stated by Mr. Chambers, all reasonable conclusions that could be drawn from those facts are true, and that they constitute a factual basis for a finding of guilt regarding each of the three counts that are charged in this case?

"MR. MCCARVILLE: I don't think that we are going to stipulate that they are—I think—I don't think we are going to stipulate that they are true, Judge. We are going to stipulate that that's the evidence that Mr. Chambers would produce.

"THE COURT: Okay.

"MR. MCCARVILLE: There's a difference in my mind.

"THE COURT: Well, and I will candidly tell you that I don't think I've ever tried a case on stipulated facts with a jury next door and I don't want to get in a hurry and have somebody decide a few weeks from now or a few months from now, whoops, wait a minute, there was critical evidence on a certain point that wasn't brought out in the stipulation. You know, ideally stipulated facts are in writing. Counsel have had time to think about it. They are typed up.

"MR. MCCARVILLE: Well, let me help you here, again, Judge. I think that the facts that—I believe that the facts from a legal standpoint that Mr. Chambers recited do cover all the bases as far as elements of the offense. That Mr. Downey and the victim were not married, that the child is under age—

"THE COURT: —14.

"MR. MCCARVILLE: Under 14, and that this probably, you know, at least he's presented facts from which the finder of fact could find that this happened in Reno County, in Kansas. And that it happened within two years of the charges being filed in this case. Although I think the statute of limitations is longer in

this case it's a five-year statute of limitations with respect to that I do stipulate that those facts, if true, would prove the defendant guilty of these charges; yes, we do."

The trial court explained its concerns about the stipulation with the following statement:

"THE COURT: Okay, what I want to avoid is a situation where we are going to resolve this in this fashion, that the Appellate Defender's Office, some bright lawyer there says, oh, look, element three they didn't prove it. That stipulation doesn't cover it. The Trial Court was in error in determining that the defendant was guilty because it's not there.

"MR. MCCARVILLE: Right, and that's what I was speaking to, Judge. Perhaps we should take a minute here and get out the Pattern Instructions for Kansas and go through those and let the Court make findings from the instructions.

"THE COURT: That's probably a good idea.

"MR. CHAMBERS: I would also prefer now that I think about it, Your Honor, since we are moving rather quick I would like to go get the photographs and introduce those as exhibits for the record.

"MR. MCCARVILLE: Right, because the photocopies aren't that great and Mr. Chambers is trying to point out to me a Keno t-shirt in the photograph. I didn't think there was a Keno t-shirt."

The trial court then called a recess so that the parties could review their positions and determine in what manner the trial court would consider the stipulated facts. After the recess, the trial court cautioned Downey and questioned whether he understood the ramifications of agreeing to the stipulation:

"THE COURT: Let's go back on the record in 94CR936. One thing, I'm sure Mr. McCarville has gone over this, Mr. Downey. Mr. Downey, you understand that you have the right to have this case resolved on a trial to a jury? The jury is here. We are ready and it's with your agreement and consent that we are going to try this case on stipulated facts to the Court rather than trying it to 12 strangers in the courtroom across the hall?

"HERBERT DOWNEY: Yes.

"THE COURT: You understand that if the outcome of the case is such that you are dissatisfied with it that you can't six months from now or six years from now say, wait a minute, I didn't understand. They were trying to hurry me into things. I needed more time to think about it. Ahh, I want to go back and have the jury trial that I waived six years ago.

"HERBERT DOWNEY: Yes.

"THE COURT: And I appreciate that Mr. McCarville is here for the benefit of his advice and counsel, but that they have to be your decisions, not Mr. McCarville's decisions, as to how best proceed in this case.

"HERBERT DOWNEY: Yes.

"THE COURT: And it's your desire to try the case on a stipulated set of facts of the case and waive trying to it a jury?

"HERBERT DOWNEY: Yes."

After the trial court was convinced that Downey understood the consequences of agreeing to the stipulation, his trial began:

"THE COURT: Let's proceed to trial on stipulated facts then. The State wish to make its proffer as to what the facts of this case are? Everything you said earlier?

"MR. CHAMBERS: That is correct, Your Honor, with exception one addition. I would introduce State's Exhibit A, which are the originals of the photographs found in Mr. Downey's personal possessions and copies of those photographs.

"THE COURT: Mr. Chambers on the sodomy charges in your proffer I believe there could be sodomy on three different theories, her oral to genital contact with him, allegations that he sucked her pee pee, oral to genital contact him to her and anal contact with his penis. Are you electing any particular theories on the aggravated criminal sodomy?

"MR. CHAMBERS: Your Honor, I believe the Information on Count 2 refers to oral sodomy, which would be the fellatio of her upon him; Count 3, I, believe, indicates anal sodomy.

"THE COURT: Okay.

"MR. CHAMBERS: The State does not feel under the facts there is required to be some penetration, if it were the third alternative the State does not feel it can show that, so we are proceeding on the fellatio of the victim upon the defendant and the anal sodomy.

"THE COURT: Anything else, Mr. Chambers?

"MR. CHAMBERS: No, Your Honor."

Questioning Downey's attorney about the stipulated facts, the trial court asked the following question:

"THE COURT: Mr. McCarville, on behalf of Mr. Downey you would accept those proffered facts without challenge as to their foundation and admit—

"MR. MCCARVILLE: —That's correct, Your Honor, and that's very eloquently stated.

"THE COURT: Is there any evidence the defense wishes to offer?

"MR. MCCARVILLE: I couldn't hear that last.

"THE COURT: Do you wish to offer any evidence in this trial on the stipulated facts?

"MR. MCCARVILLE: We would only clarify a couple of things, Your Honor. I believe that there is some reference to a Keno shirt and I don't believe there

was any evidence that it was any particular year issue of a Keno shirt. And as I stated before if we had a full trial to a jury we would in fact try to impugn the reliability of the various civilian witnesses as well as the weight of the professional witnesses['] testimony, but we do agree that the testimony that Mr. Chambers recited here would be given by his witnesses.

"THE COURT: Mr. Downey, do you have any questions about anything?

"HERBERT DOWNEY: No, sir.

*"THE COURT: You accept the statements that Mr. McCarville has made that the evidence as proffered by Mr. Chambers should be accepted by this Court without additional foundation and without challenge as to its relevancy, without challenge as to its admissibility, and it should be weighed and considered by the Court?*" (Emphasis added.)

*"HERBERT DOWNEY: Yes, I believe that's what his witnesses would say."* (Emphasis added.)

The trial court found that the stipulated facts were sufficient to convict Downey of the crimes charged.

The standard of review of a trial court's decision on the admissibility, exclusion, or manner of presentation of evidence is abuse of discretion. See *State v. Baacke*, 261 Kan. 422, 427, 932 P.2d 396 (1997); *State v. Craven*, 215 Kan. 546, 548-49, 527 P.2d 1003 (1974). This is an extraordinarily high standard. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. See *State v. Gardner*, 264 Kan. 95, 103-04, 955 P.2d 1199 (1998). Moreover, one who asserts that the trial court abused its discretion bears the burden of showing such abuse of discretion. *State v. Lumley*, 266 Kan. 939, 950, 976 P.2d 486 (1999).

Kansas appellate courts are not frequently called upon to examine issues regarding factual stipulations in criminal proceedings. However, in *State v. Kurent*, 105 Kan. 353, 184 Pac. 721 (1919), our Supreme Court addressed whether the case was properly decided on stipulated facts. In *Kurent*, the defendant argued that the trial court erred in admitting testimony in his contempt proceeding which had been taken during his criminal trial. The *Kurent* court noted:

"It appears from the record, however, that this evidence was admitted under an agreement of the defendant that it should be considered so far as it was com-

petent, relevant, and material, and should be treated the same as though the witnesses were present in court, and had been properly sworn and had given their testimony. Under this stipulation the [defendant] will not be heard to object to the form in which the testimony was presented." 105 Kan. at 355.

The present case is analogous to *Kurent* because Downey agreed that the trial court should treat the stipulation as though the witnesses were present in court. As a result, Downey has no grounds to complain that the trial court abused its discretion in accepting the factual stipulation.

Downey is additionally precluded from arguing that the trial court abused its discretion in accepting the stipulation because he asked to be tried on the stipulated facts. Having agreed to submit the case on the stipulated facts, Downey may not now complain. He is precluded from arguing error by a well-settled principle of law: "Where a party procures a court to proceed in a particular way and invites a particular ruling, he is precluded from assailing such proceeding and ruling on appellate review." *Popp v. Popp*, 204 Kan. 329, 332, 461 P.2d 816 (1969). Moreover, in *Gilliland v. Kansas Soya Products Co.*, 189 Kan. 446, 452, 370 P.2d 78 (1962), our Supreme Court noted:

"It is elementary that a litigant cannot take contrary positions, one in which he has sought and procured an order, ruling or judgment in the trial court and another in the supreme court in which he complains of such order, ruling or judgment; moreover, a litigant will not be heard on an appeal to complain of any order, ruling or judgment of the trial court which he suffered the trial court to make without objection." (Citations omitted.)

Because Downey requested a trial on stipulated facts, he is precluded from arguing on appeal that the trial court abused its discretion in accepting the stipulation.

In any event, Downey's arguments that the trial court abused its discretion in accepting the stipulation are without merit. Specifically, Downey contends that the trial court erred in accepting the stipulation because (1) the stipulation was no more than unwritten allegations by the State; (2) the evidence was contested; (3) the stipulation was enhanced by questioning from the trial court; and (4) the trial court failed to assess whether Downey understood that

by agreeing to the stipulation he waived his right to call witnesses and cross-examine the State's witnesses.

Downey first contends that the stipulation should be set aside because it was no more than unwritten allegations by the State. However, Supreme Court Rule 163 (1999 Kan. Ct. R. Annot. 186) provides: "A court is not required to give effect to stipulations between counsel, or oral admissions of counsel, which are not reduced to writing and signed by the counsel to be charged therewith, *or which are not made a part of the record.*" (Emphasis added.) As noted in *State v. Roach*, 223 Kan. 732, 736, 576 P.2d 1082 (1978), "[a] stipulation to admit into evidence . . . entered in court and on the record is as binding on the parties as if the same had been reduced to writing, signed by the parties, and filed of record." As a result, because the State's oral recitation of the stipulated facts was done on the record, the trial court did not err in accepting the stipulation.

In addition, Downey insists that the stipulation should be set aside because all the evidence, including credibility of the witnesses, was contested by defense counsel. Downey, however, is precluded from disputing the stipulation because by agreeing to it, he admitted that the facts included therein were true. Moreover, stipulations as to evidence in criminal cases are binding upon the parties represented. *White v. State*, 222 Kan. 709, 713, 568 P.2d 112 (1977). As a result, by entering into the stipulation, Downey waived his right to contest the factual evidence included therein. See *Blair v. Fairchilds*, 25 N.C. App. 416, 419, 213 S.E.2d 428 (1975) (noting that a stipulation is binding in every sense, preventing the party who makes it from introducing evidence to dispute it); see also *Kordosky v. Conway Fire & Safety, Inc.*, 304 N.W.2d 616, 619 (Minn. 1981) (noting that the defense waived any objection to certain evidence because it agreed that the evidence could be admitted if proper foundation was laid).

Downey also argues that the stipulation should be set aside because the State's proffered testimony was enhanced by questioning from the trial court. After the State informed the trial court of the stipulated facts, the trial court questioned the State to elicit further information as to what evidence the parties were stipulating to.

Downey, however, did not object to this questioning by the trial court. Because Downey failed to make a timely, specific objection to the admission of the statements from the State in response to questioning from the trial court, Downey failed to preserve this issue for appeal. See *In re Geisler*, 4 Kan. App. 2d 684, 687, 610 P.2d 640, *rev. denied* 228 Kan. 806 (1980).

Downey further argues that the trial court failed to assess whether he understood that by agreeing to the stipulation he was waiving his right to call witnesses and confront and cross-examine the State's witnesses. Under Kansas law, however, the trial court is not required to advise a defendant represented by counsel of the rights waived by agreeing to the stipulation. In *White*, our Supreme Court noted:

> "We know of no case or statute holding that a trial court must interrogate and advise a defendant, who is represented by counsel, before accepting and approving stipulations as to the evidence, and we are not prepared to initiate such a requirement. . . . If petitioner had any objection to that stipulation, the time for complaint was [at trial], not now." *White v. State*, 222 Kan. at 713.

As was the case in *White*, Downey does not allege that he "misunderstood the stipulation, or that he had insufficient time to discuss it with counsel, or that he was unaware of its effect, or that he entered into it other than freely, understandingly and voluntarily. He does not contend that he was uninformed, overreached, coerced, defrauded, or victimized in any way." 222 Kan. at 714. As a result, we find that the trial court did not abuse its discretion in accepting the factual stipulation.

*Photographic Evidence and Confession*

Next, Downey argues that the trial court erred in admitting the photographic evidence and his confession. He alleges that both pieces of evidence were illegally obtained and should not have been admitted at trial.

Downey, however, has not preserved the issue regarding the admission of the photographic evidence for review because he failed to object at trial when the State introduced the photographic evidence. "A party must make a timely and specific objection to the admission of evidence at trial in order to preserve the issue for

appeal." *State v. Cheeks*, 258 Kan. 581, 593, 908 P.2d 175 (1995); see *State v. Carr*, 265 Kan. 608, 619-20, 963 P.2d 421 (1998) (holding that in the absence of a contemporaneous objection, the question of admissibility of certain evidence was waived by the defendant). As a result, we are precluded from addressing whether the trial court erred in admitting the photographic evidence.

In any event, Downey contends that under the terms of the stipulation, issues regarding the trial court's admission of the photographic evidence and his confession were preserved for review. According to Downey, although he agreed to the stipulated facts, the parties acknowledged that he could nevertheless challenge the admissibility of certain evidence on appeal. The only indication of such an agreement in the record is a statement by defense counsel prior to the State's reading of the stipulated facts. Defense counsel stated, "Mr. Downey would like to avoid the expense and the jeopardy to him of a trial, a formal extensive trial, but still preserve his rights of appeal. Especially the Court's rulings on the two motions we heard this morning." Remarkably, at oral argument before this Court, the State conceded that it made an agreement with Downey allowing for the preservation of issues for appeal.

The parties, however, are precluded from devising their own rules of evidence. See 29 Am. Jur. 2d, Evidence § 8, p. 65 ("[P]arties cannot by contract control or modify the law of evidence, and any attempts in that direction are invalid, and not binding upon the parties or the court."). If this court were to accept the parties' allegation that under the terms of the stipulation Downey preserved certain issues for appeal, then our rules of evidence, specifically K.S.A. 60-404, would be meaningless. The statute provides:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."

Nothing short of an objection at the time evidence is offered satisfies this requirement. See *State v. Nunn*, 244 Kan. 207, 213, 768 P.2d 268 (1989). Because Downey did not renew any objection to

the photographs and confession when the State presented evidence of such in the stipulation, Downey has not preserved these issues for appeal.

In summary, we find that Downey waived his right to argue that the trial court erred in admitting the photographic evidence and confession because (1) Downey agreed to the stipulation which included facts regarding the photographs and confession; (2) Downey did not object when the evidence was introduced at trial; and (3) Downey's alleged agreement with the State regarding preservation of issues for appeal was not done on the record.

### Venue

Similarly, by agreeing to the stipulated facts, Downey also waived his right to challenge the trial court's venue. In fact, Downey's attorney conceded that the stipulated facts were sufficient to establish venue in Reno County, when he stated, "[The State] has presented facts from which the finder of fact could find that this happened in Reno County, in Kansas." Moreover, Downey's attorney went so far as to say, "I believe that the facts from a legal standpoint . . . cover all the bases as far as [the] elements of the offense." As a result, we find that Downey is precluded from arguing that the trial court lacked venue.

### Sufficiency of the Evidence

Downey also argues that there is insufficient evidence to sustain his convictions. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998). The instant case, however, was tried on stipulated facts. "'[I]n a case decided on stipulated facts, the appellate court has de novo review.'" *State v. Mendoza*, 20 Kan. App. 2d 541, 542, 889 P.2d 1147, *rev. denied* 257 Kan. 1095 (1995) (quoting *State v. Rowe*, 18 Kan. App. 2d 572, 573, 856 P.2d 1340, *rev. denied* 253 Kan. 863 [1993]).

Although on appeal Downey argues that his convictions are not supported by sufficient evidence, this argument is contrary to defense statements made at trial. For example, as we have noted, defense counsel stated, "I believe that the facts from a legal standpoint . . . cover all the bases as far as [the] elements of the offense." Because of the defense's position at trial, Downey is precluded from making contrary arguments on appeal. In any event, for the reasons set forth below, Downey's convictions are supported by sufficient evidence.

*Rape*

Downey argues that his rape conviction is not supported by sufficient evidence. The elements of rape are set forth at K.S.A. 21-3502 which, in applicable part, prohibits "sexual intercourse with a child who is under 14 years of age." K.S.A. 21-3502(a)(2). Sexual intercourse is defined as "any penetration of the female sex organ by a finger, the male sex organ or any object." K.S.A. 21-3501(1).

Downey's rape conviction is based on the following circumstantial evidence. First, the parties stipulated that while at the Kansas State Fair S.R. indicated that "[Downey] put his pee pee in her pee pee." S.R.'s grandmother examined her and noticed tearing and redness in S.R.'s vaginal area. The parties stipulated that Dr. Casey would testify that in his medical opinion S.R. was subjected to repeated sexual intercourse. Dr. Casey based this finding on the gaping of S.R.'s vagina and that no portion of her hymen remained. Dr. Casey indicated that his physical findings were consistent with the molestation taking place during the time-frame S.R. was in Reno County. Moreover, the parties stipulated that Downey had access to S.R. while they were in Reno County because an emergency developed within the carnival and S.R.'s grandmother placed S.R. in Downey's care.

Consideration of the foregoing stipulated facts indicates that Downey's rape conviction is supported by sufficient evidence. The medical evidence clearly establishes that S.R. was raped. Moreover, S.R. alerted her grandmother to the rape and the grandmother's observation of tearing and redness in S.R.'s vaginal area confirmed S.R.'s accusation. In addition, S.R. told her grandmother that

Downey was the individual who molested her. As a result, there is sufficient evidence to support Downey's rape conviction.

*Aggravated Criminal Sodomy—Oral*

Downey does not argue that the evidence was insufficient to convict him of aggravated oral criminal sodomy because he confessed to orally sodomizing S.R. and the photographic evidence supports the conviction. Although Downey admits to oral sodomization, he contends that the offense did not occur in Kansas, but rather in other states where the carnival stopped. This court is precluded from considering Downey's argument that the trial court lacked venue because, as previously discussed, he waived this argument when he conceded that the factual stipulation was sufficient to established that the offenses occurred in Reno County. As a result, we affirm Downey's aggravated oral criminal sodomy conviction because it is supported by sufficient evidence.

*Aggravated Criminal Sodomy—Anal*

Downey additionally argues that the evidence is insufficient to establish that he anally sodomized S.R. Specifically, Downey insists that the facts do not establish (1) that S.R. was anally sodomized; or (2) that he was the perpetrator if S.R. was anally sodomized.

The elements of aggravated criminal sodomy are set forth in K.S.A. 21-3506, which in applicable part prohibits "causing a child under 14 years of age to engage in sodomy with any person." Moreover, "sodomy" is defined in part as "anal penetration, however slight, of a male or female by any body part or object." K.S.A. 21-3501(2).

In the instant case, medical evidence of anal sodomy included the stipulation that Dr. Casey would testify that "in his medical opinion [S.R.] had suffered . . . anal sodomy." Dr. Casey's medical opinion was based on evidence that S.R.'s anus expanded, rather than retracted, when touched by the doctor. According to Dr. Casey, expansion of the anus is consistent with repeated anal penetration because the anus was trained to accommodate an inserted object. Dr. Casey concluded that S.R. was anally sodomized

and that the sodomization could have occurred while S.R. was in Reno County.

Based on this medical evidence, the trial court found that S.R. was subjected to anal penetration. When the trial court has made findings of fact and conclusions of law, the appellate court's review is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *State v. Haskins,* 262 Kan. 728, 731, 942 P.2d 16 (1997).

Substantial competent evidence supports the trial court's finding that S.R. was anally penetrated. Dr. Casey, a board-certified physician, testified that in his medical opinion S.R. was subjected to repeated anal penetration. Dr. Casey based his conclusion on documented medical studies. As a result, the trial court's finding that S.R. was anally sodomized is supported by substantial competent evidence.

Moreover, substantial competent evidence supports the trial court's finding that Downey was the individual who anally penetrated S.R. While the carnival was at the Kansas State Fair, S.R.'s grandmother was forced to place S.R. in Downey's care because of an emergency that developed within the carnival. During this time, Downey had access to S.R. Later, S.R. told her family Downey "put his pee pee in her pee pee." Such a statement could be a 2-year-old child's attempt to communicate that Downey forced sexual intercourse upon her, that he anally sodomized her, or both. This evidence, coupled with the medical evidence, amounts to substantial competent evidence supporting Downey's aggravated anal criminal sodomy conviction.

*Sentencing*

Downey's final argument on appeal is that the trial court imposed an illegal sentence. Downey insists that the trial court sentenced him to an illegal term, based on the wrong sentencing grid. The State concurs that the sentence is in error.

Downey's convictions resulted from offenses committed in September 1994. At the time of the offense, rape and aggravated criminal sodomy were severity level 2, person felonies. Downey's crim-

inal history score was D. Based on these factors, the trial court sentenced Downey to 250 months for the rape conviction and 154 months for each of the aggravated sodomy convictions. However, the trial court did not rely on the sentencing guidelines in effect on the date of the offense. Under the 1994 sentencing guidelines, the maximum sentence Downey can receive is 125 months for the rape conviction and 77 months for each of the aggravated sodomy convictions. However, K.S.A. 21-4720(b)(4) provides that the "total prison sentence imposed in a case involving multiple convictions arising from multiple counts within an information, complaint or indictment cannot exceed twice the base sentence." As a result, Downey's maximum sentence is 250 months.

Convictions affirmed, sentences vacated, and case remanded for resentencing.